In the Matter of the Application of DONALD MARCELLUS and MAURICE ABRAMS, on Behalf of Themselves and All Others Similarly Situated, Petitioners, for an Order Pursuant to Article 78 of the Civil Practice Act against PAUL J. KERN, as President, FERDINAND Q. MORTON and WALLACE S. SAYRE, as Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, and Others, Respondents.

Supreme Court, Special Term, New York County, March 1, 1939.

*H. Eliot Kaplan* [*H. Eliot Kaplan* and *Samuel D. Smoleff* of counsel], for the petitioners.

*John J. Bennett, Jr., Attorney-General*, for the respondents.

*Henry W. Schober,* for the respondent Hildegard I. Kesting.

Pecora, J. This proceeding under article 78 of the Civil Practice Act is directed to the municipal civil service commission and the president justice of the Municipal Court of the City of New York. It requires the commission to certify and the president justice to appoint to positions as court attendants persons on the civil service eligible list in the order of their standing upon the list without regard to their residence in any particular borough of the city of New York.

The proceeding involves the construction of section 1373 of the Greater New York Charter, as amended by chapter 716 of the Laws of 1937, which contains the following provision, among others: " No clerk, deputy clerk, assistant clerk, or other employee of this court shall hold any other office or be interested in any other business except as permitted by this act, but shall give his whole time to his respective duties and shall reside in the borough in which the district for which he was appointed is situated." There is one court attendant list from which appointments to the Court of Special Sessions, the City Court, and the Magistrates' Court have been made from among the three persons standing highest on the list, in accordance with ordinary civil service practice. Vacancies for the position of court attendant in the Municipal Court have, however, been filled from the highest on the list of persons residing in the borough for which the appointment was intended. This practice has been followed by the respondents in connection with the appointment of Seymour Geller and Bertram Hess in the districts in Manhattan and Hildegard I. Kesting as court attendant in the borough of Queens. While these appointees were the highest among the residents of their borough they were far below others in numerical order on the eligible list. Petitioners contend that the provision of the statute in question which requires residence by one " in the borough in which the district for which he was appointed is situated," relates to residence after appointment, and that it does not dispense with the necessity of following the order on the eligible list.

Upon the hearing of the argument the court suggested that the three appointees whose right is being contested be joined as parties. This has been done, and the petition is, accordingly, amended so as to include the three appointees as parties respondent.

In all matters of appointments and promotions in the civil service the mandate of the Constitution (Art. 5, § 6), that they shall be made according to merit and fitness to be ascertained so far as practicable by competitive examinations, is paramount. There being only one list for court attendants from which appointments are made for the various inferior courts, there is no reason why this

plain mandate of the Constitution should be fitted to adjust itself to an act of the Legislature or any other legislation. If chapter 716 of the Laws of 1937 be interpreted as requiring the appointive power to disregard the standing of persons on the eligible list in order to conform with the residence requirement, it would be unconstitutional. The court expresses no opinion as to whether separate eligible lists established for each borough by separate examinations would be proper. That question does not confront us here. But so long as all the eligibles are on a single list, any direction by the Legislature or otherwise that the president justice shall skip those high on the list in order to conform with a narrow residence requirement would be void. On the other hand, if the statute can be read in such a way as not to violate constitutional principle this should be done.

A fair reading of its intent indicates that the residence requirement is not a condition of eligibility for the examination, but a condition of qualification for continuance in office after appointment. The law prescribes that the *employee* shall reside in the borough. One cannot become an employee until he has been appointed. The use of the verb " *shall reside*," as against the verb " *was appointed*," indicates that the intent was that after one has been appointed and has thereby become an employee, he shall reside in the borough. This interpretation is not strained, but is supported by analogy with section 2 of the Municipal Court Code, which contains the provision in respect of Municipal Court justices and the president justice that " such President Justice and every Justice shall be a resident and elector in the district for which he shall be elected or appointed." This language specifically prescribes residence as a qualification *prior* to election or appointment. In this respect it differs from the language in section 1373 of the Greater New York Charter, which must be construed as meaning that an appointee, *after* he becomes an employee of the court, must reside in the borough in which the district is situated.

The motion is, therefore, granted in all respects. Settle order.