STATE, COUNTY & MUNICIPAL EMPLOYEES LOCAL 339
*v.* CITY OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE EMPLOYEES—RESIDENCE
—ORDINANCES.

Trial court's findings in class suit by 163 civil service employees of
defendant city to enjoin defendants from enforcing city ordi-
nance requiring such employees to establish bona fide residences
within the city that such ordinance, adopted under general
home-rule powers conferred by statute, was adopted under cir-
cumstances amounting to a wholesale discharge of the em-
ployees, in that adequate housing facilities for all such em-
ployees were not available to them in suitable surroundings at
rentals their respective incomes would justify *held,* supported
by ample evidence; there having been no supporting charter
provisions for the ordinance (CL 1948, § 117.1 *et seq.,* as
amended).

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—HOME-RULE CITY
ORDINANCES—EMERGENCY.

Whether or not Supreme Court should take judicial notice that
home-rule city adopted ordinance requiring its civil service
employees to establish bona fide residences within the city
under emergency conditions due to the international situation
is not determined, where issue was not pleaded or otherwise
presented to the trial court.

3. MUNICIPAL CORPORATIONS — ORDINANCES — REASONABLENESS — IN-
JUNCTION.

A trial court may properly consider and pass upon the reason-
ableness of a municipal ordinance based upon general home-
rule powers and not specifically authorized by charter or statute
in a suit to enjoin enforcement of such ordinance.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 37 Am Jur, Municipal Corporations § 155 *et seq.*
[2] 3 Am Jur, Appeal and Error § 246.
[5] 14 Am Jur, Costs § 37.

4. SAME—ORDINANCES—RESIDENCE OF CIVIL SERVICE EMPLOYEES—
CONSTITUTIONAL LAW.

  Whether or not home-rule city ordinance requiring civil service
    employees to establish and maintain a bona fide residence
    within the city within 90 days or resign from the service was
    constitutional as to those who were already residents is not
    determined, where the ordinance is declared unconstitutional as
    arbitrary and unreasonable as to nonresident employees be-
    cause of lack of available adequate housing facilities which
    they could afford (US Const, Am 14; Mich Const 1908, art 2,.
    §§ 1, 16).

5. COSTS — PUBLIC QUESTION — ORDINANCES — HOME-RULE CITY EM-
PLOYEES—RESIDENCES.

  No costs are allowed in suit to enjoin enforcement of home-rule
    city ordinance requiring its civil service employees to establish
    bona fide residences within city within 90 days, a public ques-
    tion being involved.

Appeal from Wayne; Robinson (Thomas N.), J.,
presiding. Submitted June 8, 1960. (Docket No.
25, Calendar No. 47,991.) Decided April 26, 1961.

Bill by State, County and Municipal Employees
Locals 339 and 41, AFL-CIO, Mae Zientek and Helen
Pallash against the City of Highland Park, a munici-
pal corporation, its governing council and its civil
service board, as a class suit affecting employees
living outside the municipality, to enjoin enforce-
ment of ordinance requiring them to establish resi-
dences within the city or suffer termination of em-
ployment. Decree for plaintiffs. Defendants appeal.
Affirmed.

*Bailey & Robbins,* for plaintiffs.

*Colin J. McRae,* City Attorney (*Hugh G. Allerton,*
of counsel), for defendants.

SOURIS, J. The late Honorable Thomas N. Robin-
son, sitting as a visiting judge in the third judicial
circuit, granted a decree enjoining defendants from

enforcing against 163 of defendant city's employees for whose benefit plaintiffs instituted this class suit a city ordinance requiring said employees to establish bona fide residences within defendant city. The chancellor found the ordinance to be arbitrary and unreasonable as it was sought to be applied to said 163 employees of defendant.

The ordinance was adopted by the city of Highland Park in 1956 and was entitled, "An ordinance to require that all employees in the service of the city of Highland Park establish and maintain a bona fide residence within the corporate limits of the said city." The entire ordinance is printed in the margin.*

In 1941 the defendant city's council adopted a resolution authorizing the city's department heads, within their discretion, to permit city employees

---

* "Sec. 1. The provisions of this ordinance shall apply to all employees in the service of the city of Highland Park.

"Sec. 2. All employees in the service of the city of Highland Park who are not now bona fide residents of the said city shall be required to establish a bona fide residence within the corporate limits of the city of Highland Park within 90 days from the effective date of this ordinance.

"Sec. 3. All employees shall be required to maintain a bona fide residence within the corporate limits of the city during the period of their employment.

"Sec. 4. Any employee who fails to establish a bona fide residence within 90 days from the effective date of this ordinance and any employee who now or in the future fails to maintain a bona fide residence within the corporate limits of the city of Highland Park shall be separated from the service of the city immediately or as soon thereafter as a qualified resident can be appointed to the position held by the nonresident employee.

"Sec. 5. When in the interests of the city service, due to a lack of qualified applicants, it becomes necessary to recruit employees without the city of Highland Park, such an employee shall be required to establish a bona fide residence within 1 year from the date of their appointment to the position. The appointment of a nonresident to a position in the classified service shall first be approved by the civil service board.

"Sec. 6. All employees who are separated from the city service under the provisions of this ordinance shall be deemed to have resigned and such an entry will be made upon their personnel records.

"Sec. 7. If any section, sentence, clause or phrase of this ordinance is, for any reason, held to be void, such decision shall not affect the validity of the remaining portions of this ordinance."

working under their supervision to reside outside the city upon proper showing that such employees were unable to pay the high rentals charged in Highland Park during the then current war emergency. In 1951 another council resolution was adopted which required all nonresident employees of the city to establish bona fide residences within the city within 1 year. This latter resolution provided that failure to comply with its provisions would be cause for discharge, but it provided for an appeal to the city council, in the case of hardship, for an extension of 6 months. Evidence presented at the trial disclosed that the city took no steps to enforce this resolution.

In 1956 the ordinance involved in this case was adopted pursuant to police powers of the city and not by virtue of express charter or statutory authorization.

At the time of enactment of the ordinance, plaintiffs claimed there were approximately 250 of defendant city's employees who lived beyond its boundaries, but by the time the case was tried the number of such employees had been substantially reduced, either by discharge or resignation from employment or by acquisition of residence within the city's boundaries. It was stipulated that at the time of trial there were 163 of defendant city's employees, nonresidents in the city, in whose behalf plaintiffs were acting. It was plaintiffs' claim in their bill of complaint and before the trial court that the ordinance as sought to be enforced against said employees was arbitrary and unreasonable, violated the due process provisions of article 2, § 16, of the Constitution of the State of Michigan (1908) and of the Fourteenth Amendment to the United States Constitution, and violated said employees' right to equal protection of the laws as guaranteed by article 2, § 1, of the Constitution of the State of Michigan

and by the Fourteenth Amendment to the United States Constitution. It was also plaintiffs' claim that, by defendants' failure to enforce the council resolution of 1951, defendants were estopped to enforce the 1956 ordinance.

Much testimony was taken by the chancellor from a very large number of witnesses, many of whom were nonresident employees of defendant city, who testified concerning their efforts to acquire residence within the city in compliance with the apparent requirement of the ordinance. Other witnesses were offered by both sides who testified concerning the availability, or lack thereof, of adequate housing within the city at prices or rentals within the range of salaries paid city employees. There was evidence from which it appears that the population of the city of Highland Park declined between the years 1940 and 1950 and from which it is reasonable to infer a further decline during the period subsequent to 1950. However, there was also testimony indicating that changes within the city resulted in a drastic curtailment of residential facilities subsequent to 1940. For example, at the time of trial there were fewer than 50 vacant lots, most of them unsuitable for home construction because of their location near industrial properties. There is also testimony to the effect that a substantial number of residences were demolished in recent years for expressway construction and commercial and industrial construction. Highland Park is a city consisting of 2.9 square miles completely surrounded by the cities of Detroit and Hamtramck. There is no practical way in which it can acquire additional residential property.

The employees involved in this litigation are civil service employees whose gross pay ranges from $60 to $70 per week. Many of them are employees of the city's general hospital. The testimony indi-

cated that most of the few residences available for rental at the time of the adoption of the ordinance were not available to the employees either because the rentals asked were higher than such employees could afford or the landlords refused to rent their property to tenants with minor children.

The chancellor's opinion succinctly states his findings, based upon which he concluded the ordinance was arbitrary and unreasonable, and therefore unconstitutional, as it was sought to be applied against the 163 civil service employees represented by plaintiffs.

"The residences are old, upwards of 75% being from 35–45 years of age, with few under 20 years old, mostly large and expensive to maintain, and most of them in need of repairs. The property of the city runs to industrial commercial enterprises rather than residence facilities.

"The testimony of witnesses for the city of Highland Park makes no serious contention that plaintiffs' proofs do not represent the true situation, but the testimony of defendants' witnesses, including its personnel director and 2 real-estate operators, seems rather to accentuate than decrease the force of plaintiffs' testimony.

"Granting that the burden is on those seeking to establish the invalidity of the ordinance, it appears that no adequate survey, if any at all, has been shown to have been made by the city, or has other testimony been offered by it, which could serve to offset the testimony of many of the employees, and that of other witnesses, all of which appears overwhelmingly to establish an almost total lack of adequate facilities to accommodate the employees required to obtain such within 90 days under the ordinance.

"This court is therefore obliged to agree with plaintiffs. There is no room to doubt that the city of Highland Park cannot accommodate an influx of 163 employees and their families so as to furnish adequate housing conditions for all of them, in suit-

able surroundings and at rentals as their respective income justify.

"To this extent the ordinance is unreasonable in that it presents an alternative that is impossible to attain, and that, under penalty of separation from service in the status of resigned employees. The choice under the proofs as to whether employees shall reside in Highland Park or resign, is not a real choice. It is rather, by reason of inadequate facilities that offer no opportunity of choice, a blunt method of discharging civil service employees wholesale without cause.

"Defendants argue that the city has the power to pass the ordinance; that the city is not estopped; that there is no vested right in a city employee to his job; that the employee has no vested right to a pension; that a resigned employee does not lose his old age or social security benefits; and that a court may not inquire into the hidden motives which may move a legislative body to exercise a power conferred on it.

"It is not necessary to disagree with these arguments nor to decide these points where the proofs so overwhelmingly establish the present inadequacy of housing accommodations, in the face of which these law arguments may be conceded inasmuch as their disposition is not necessary for the disposal of this particular controversy. It may be said, however, that the court, in the absence of any express charter provision requiring employees to reside in the city, and where reliance here is placed on general home-rule powers conferred by statute,* is justified in considering and passing upon, as it does here, the reasonableness of the municipal ordinance."

With the chancellor's findings we are in complete agreement, there being ample evidence in this record to support such findings. Even defendants do not directly challenge the chancellor's right to consider

---

* See CL 1948, § 117.1 *et seq.*, as amended (Stat Ann 1949 Rev § 5.2071 *et seq.*, as amended).—Reporter.

and pass upon the reasonableness of the ordinance as he did, but defendants instead take the position before us on appeal that emergencies may require the enactment of ordinances under the police power which would be held improper in normal times. Defendants refer, of course, to the "international situation that has existed between our country and certain foreign nations since the end of the Korean War", as to which defendants ask that we take judicial notice. We need not pursue this matter far, for it was not an issue pleaded or otherwise presented to the trial court, nor is it otherwise an issue meriting our consideration at this time.

That the chancellor correctly stated the law of this State to be that the court may consider and pass upon the reasonableness of a municipal ordinance based upon general home-rule powers and not specifically authorized by charter or statute is established by *1426 Woodward Avenue Corp.* v. *Wolff,* 312 Mich 352. See, also, *People* v. *Armstrong,* 73 Mich 288 (2 LRA 721, 16 Am St Rep 578); *People* v. *Gibbs,* 186 Mich 127 (Ann Cas 1917B, 830); *Harrigan & Reid Co.* v. *Burton,* 224 Mich 564 (33 ALR 142); *People's Appliance & Furniture, Inc.,* v. *City of Flint,* 358 Mich 34; *Palmer Park Theatre Co.* v. *City of Highland Park,* 362 Mich 326.

The chancellor determined only that the ordinance could not be enforced against the 163 employees of defendant city who were then nonresidents thereof. He did not determine, nor need we determine, the constitutionality of said ordinance as it applied to the many employees of defendant who were then residents of the city and who were required by the ordinance to maintain their residences within the city.

In view of our conclusion that the decree must be affirmed on the basis that the ordinance as it applied to the employees represented by plaintiffs was uncon-

stitutional because it was arbitrary and unreason-
able, it is unnecessary for us to consider and deter-
mine the other issues raised by defendants, both in
the trial court and on appeal.

Decree affirmed.   No costs, a public question being
involved.

Kelly, Smith, Black, Edwards, and Kavanagh,
JJ., concurred with Souris, J.

Dethmers, C. J., and Carr, J., concurred in result.