WILLIAMS *v.* CIVIL SERVICE COMMISSION
OF THE CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — CIVIL SERVICE — RESIDENCE RULE —
CHARTER — STATUTES.

The Detroit Civil Service Commission did not exceed its powers
or act unlawfully by promulgating a general residence re-
quirement for employees of that city since a home-rule city
may, in its charter, provide for a system of civil service for
its employees and the civil service commission was authorized
by the city charter to promulgate such a rule (MCLA § 117-
.41; Detroit Charter, Title 4, Ch 2, § 7).

2. MUNICIPAL CORPORATIONS — CIVIL SERVICE — EMPLOYEES — RESI-
DENCE — CONSTITUTIONAL LAW.

No constitutional right exists to be employed by a municipality
while living elsewhere.

3. MUNICIPAL CORPORATIONS — CIVIL SERVICE — EMPLOYEES — RESI-
DENCE — POLICY.

The question of whether to make residence within a municipality
a condition of public employment is one which must be
largely addressed to the legislative branch of government
and whether such a requirement is reasonable and valid de-
pends upon the circumstances.

Appeal from Court of Appeals, Division 1, Levin,
P. J., and R. B. Burns and McGregor, JJ., reversing
Wayne, Victor J. Baum, J. Submitted December 3,

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 37 Am Jur, Municipal Corporations § 230.
Residence or inhabitancy within district or other political unit
for which he is elected or appointed as a necessary qualification
of officer or candidate, in absence of express provision to that
effect. 120 ALR 672.

1969. (Calendar No. 32, Docket No. 52,385.) Decided May 4, 1970.

15 Mich App 55, reversed.

Complaint by George L. Williams, and others similarly situated, against the Civil Service Commission of the City of Detroit, its members and its Secretary and Chief Examiner, and their official capacity, for an order of superintending control requiring defendants to reinstate plaintiffs as city employees. Judgment for defendants. Plaintiffs appealed to the Court of Appeals. Reversed. Defendants appeal. Judgment of the Court of Appeals reversed, and that of the trial court affirmed.

*Robert Reese,* Corporation Counsel, and *John R. McKinlay* and *Harold Hood,* Assistant Corporation Counsels, for defendants.

ADAMS, J.

## I. *Facts and Proceedings*

On May 19, 1964, plaintiffs petitioned defendant Civil Service Commission for a hearing, alleging that Rule VII promulgated by the commission was illegal because it interfered with the right of city employees to live where they wanted, had no relationship to the performance of their work, was not authorized by the city charter and violated provisions of state and federal constitutions.

A hearing was held on October 27, 1964. Plaintiffs offered no testimony. A stipulation of facts was submitted and entered. The stipulation provided:

"All of the petitioners  *  *  *  are employees of the City of Detroit, and as such are governed by the

rules and regulations of the Civil Service Commission. They each object to Rule VII—Residency, on the grounds that it interferes with their desire to live outside of the City of Detroit while employed by the City of Detroit. If permitted to do so, each petitioner would seek to purchase property suitable for a residence outside the City."

On December 8, 1964, the commission issued its decision, in which it found "that it is rather universally recognized in the public service that such requirements reflect sound public policy and specifically further the objective of democratic government of having places of public employment and office filled by citizen-participants." Plaintiffs' petition was dismissed.

Plaintiffs brought the present action for writ of superintending control (or for leave to appeal, or for writ of mandamus) on December 18, 1964.

Victor J. Baum, the circuit judge, carefully reviewed the issues presented to him in a lengthy opinion and reached the following legal conclusions:

"1. In summary Rule VII is within the power conferred by the city charter upon the Detroit Civil Service Commission.

"2. The rule does not offend constitutional guarantees of substantive due process because the rule is reasonable. It is neither arbitrary nor capricious.

"3. It satisfies constitutional guarantees of equal protection of the laws because it does not discriminate among persons similarly situated. The distinction which the rule draws between residents and nonresidents is reasonable and therefore the distinction is permissible classification.

"4. The mere possibility that the individual exemption provisions of the rule may be unlawfully applied does not vitiate the entire rule.

"5. The rule does not deny nonresidents substantially equal opportunity to take civil service

examinations.   Thus it deprives no one of constitutionally guaranteed civil or political rights.

"6. There is no constitutional right, as such, to work for the City of Detroit while living elsewhere."

Upon appeal to the Court of Appeals, that Court, on its own motion, requested the parties to file briefs on the following questions:

"1. Does the charter of the City of Detroit allocate to the Civil Service Commission the power to require continued residence in the City of Detroit as a condition of continued employment by the city, and to require discharge or other disciplinary action for noncompliance?

"2. Did the mayoral and common council endorsement of the residency requirement in September, 1964, constitute a delegation to the Civil Service Commission of authority to promulgate such a requirement, and, if so, was it within the power of the common council to do so, and, if so, to do so by resolution?"*

The Court of Appeals held:

"Since we have concluded that the charter of the city of Detroit does not allocate to Detroit's civil service commission the power to establish a residency requirement as a continuing condition of employment, it is not necessary for us to reach the attack on constitutional grounds made upon the rule by the appellants."   15 Mich App 55, at p 65.

---

* A letter had been written on September 1, 1964 by direction of the Civil Service Commission by Donald J. Sublette, Secretary and Chief Examiner, to the Common Council for the City of Detroit, requesting the council to review and endorse "the residence policies of the city as set forth in the rules of the Civil Service Commission." On September 2, 1964, Mayor Jerome P. Cavanagh wrote to the Common Council stating that he agreed with the residence requirement of the Civil Service Commission.   On September 8, 1964, the Common Council unanimously adopted the following resolution:

"Resolved, That this body having reviewed and carefully considered the foregoing rules of the Civil Service Commission of the City of Detroit relating to residence, does hereby endorse the residence policies as set forth therein."

The Court of Appeals declined appellants' invitation to pass on the constitutionality, interpretation and effect upon appellants of a residency ordinance adopted in May, 1968 by the City of Detroit, providing that "all police officers, appointees in the unclassified service   *   *   *   and all persons working in any branch of the classified service of the city shall reside in the City of Detroit." 15 Mich App 55, at p 66.

The Court of Appeals voluntarily addressed itself to the question of the power of the commission to enforce its residency rule. For the purpose of determining commission action, the Court of Appeals went outside the record in this case to examine the 1967 interim annual report of the commission and to quote the number of cases of investigation and the number of cases of specific action for 1967. 15 Mich App 55, at p 60. The Court of Appeals then determined:

"The appointing authority, not the commission, decides when, if at all, to discharge an employee. Rule VII, which seeks to impose a mandate on the appointing authority and to compel discharge for nonresidence, exceeds the power of the commission to promulgate or enforce." 15 Mich App 55, at p 61.

We granted leave to appeal (381 Mich 817).

## II. *Statute, Charter, Civil Service Commission Rules*

PA 1909, No 279 (the "Home Rule" Act), as amended, § 4i (MCLA § 117.4i [Stat Ann 1970 Cum Supp § 5.2082]), states that a home rule city may, in its charter, provide:

"(7) For a system of civil service for its employees including the employees of any city board of

health and the employees of any prison operated
or maintained by it.   *   *   *   ."

The charter of the City of Detroit, Title 4, ch 2,
§ 7, contains the following language:

"The powers and duties of the commission shall
be as follows:

"(a) It shall classify all the offices and positions
of employment with reference to the examinations
herein provided for, excepting as herein otherwise
provided;

"(b) *Shall* from time to time *make,* in accordance
with the provisions hereof, *rules* adapted to carry
out the purposes of this chapter and not inconsistent
with its provisions for the examination and selection
of persons to fill the offices and positions in the
classified service, which are required to be filled by
appointment and *for the selection of persons to be
employed in the service of the city;*

"(c) *Shall supervise the administration of the
civil service rules,* hold examinations thereunder
from time to time, giving due notice thereof, prepare
and keep an eligible list of persons passing such
examinations and certify the names of persons
thereon to appointing officers of the several depart-
ments;

"(d) *Shall,* by itself or otherwise, investigate the
enforcement of the provisions of this chapter, *of
its own rules and of the action of appointees in the
classified service.*   *   *   *   "   (Emphasis added.)

Title 4, ch 2, § 11 of the charter contains the
following language:

"All applicants for offices or positions in said
classified service, except those herein otherwise
specified, shall pass an examination which shall be
made public, competitive and free to all citizens of
the United States, with specific limitations as to
residence, age, health, habits and moral character,

which shall be uniform as to each kind of work or occupation; * * * ."

Rule VII of the defendant Civil Service Commission provides, in part, as follows:

"Section 2.   Residence Requirement.

"All persons working in any branch of the city civil service shall reside in the City of Detroit. If, however, upon consideration of all pertinent facts concerning an employee, or the nature of his work, the commission shall find that the interests of the city would be served best, and that justice to the employee so requires, permission may be granted to such employee to reside outside of the city, upon application being made to this commission, with adequate reasons assigned, such application being approved by the department in which such employee is working."

### III. *The Question*

Did the Civil Service Commission of the City of Detroit exceed its powers or act unlawfully by promulgating a general residence requirement for municipal employees?

### IV. *Discussion and Decision*

The question of the enforcement of the rule was not before the Court of Appeals; that Court erred in raising the question and passing upon it. At issue here is the validity of a rule of the Civil Service Commission which makes city residence a requirement for municipal employees. Consequently, we decline to pass upon the question of enforcement of the rule by discharge of an employee, whether by the commission or by an appointing authority.

(*a*) *Is Rule VII Within the Power Conferred by the City Charter?*

The trial judge analyzed the provisions of Rule VII and the charter, in part, as follows:

"The city fathers did say and the people of Detroit did enact that there might be 'a limitation,' that is a condition, requirement or restriction, of 'residence' so long as it is 'uniform as to each kind of work or occupation.' A residence restriction applicable to each and every job, occupation or work classification within the city's classified service would appear to be uniform as to each kind of work or occupation. In essence, Rule VII is such a restriction."

(*b*) *Does the Residence Requirement Violate Due Process?*

The trial court found:

"Thus the requirement of substantive due process prohibits arbitrary, capricious, whimsical, irrational, frivolous or clearly unreasonable regulations of administrative bodies. But substantive due process requirements do not prohibit administrative rules which are merely unwise, unsound, or, by the judges' standards, unintelligent. Courts have held that if the propriety of the purpose of the administrative rule and the means it employs to achieve that purpose are reasonably debatable, the rule cannot be judicially abolished.

"Does Rule VII pass such an ends-means test of reasonableness? I believe it does. The proponents of the city residence requirement argue that local residence tends to make a person a better municipal employee. They argue also that the encouragement of local citizen service in municipal government is a desirable end in itself. Such points of view would appear to be fairly debatable. Clearly, the improvement of the quality of municipal employment services, the enhancement of the efficiency of such services and the holding down of costs are all legitimate

objects of city government. Is a city residence requirement reasonably related to the achievement of these objectives? Many respectable authorities claim there is such a relationship.

\* \* \*

"Whether the court shares such views is quite beside the point. The issue is whether the proposition that the city residence requirement has a beneficial effect on city employment services is reasonably debatable. In good conscience I must say that it is."

(*c*) *Does Rule VII Deny the Equal Protection of the Laws?*

The trial judge analyzed the above question, in part, as follows:

"Is the classification embodied in Rule VII reasonable? There is no question that a factual difference exists respecting place of residence as between Detroiters and those who live elsewhere.

"Is this difference in some way related to a legitimate goal of the Civil Service Commission? Since high quality performance by civil service employees is a legitimate goal of the commission, the answer must be yes, if it can be fairly debated that there is a tendency for city residents to feel special incentives to good performance in city employment, not experienced by nonresidents. We have already considered this matter in connection with the due process issue. The commission's position is fairly debatable whatever may be the courts' view of its soundness. \* \* \* Therefore, the classification effected by Rule VII does not offend the equal protection clauses of the State Constitution or the Constitution of the United States."

(*d*) *Does Rule VII Violate Due Process Because of the Provision for Individual Exemptions?*

In analyzing the above question, the trial judge, in part, stated:

"One provision of the rule presents a more difficult question. The provision for individual exemptions * * *.

"[T]here is no evidence that there has ever been an application of the individual exemption clause which conflicts with the uniformity requirement of the charter. The mere possibility that a rule will be unlawfully administered or applied is not a ground for invalidating it. *Kennedy* v. *City of Newark* (1959), 29 NJ 178 (148 A2d 473)."

*(e) Does Rule VII Violate the Provisions of Section 2, Article I of the 1963 Michigan Constitution which Prohibits the Denial of the Enjoyment of Civil or Political Rights?*

The trial judge concluded:

"As I construe Rule VII, it does not deny nonresidents access to civil service examinations. They have the same right to take examinations as residents of the city. Like the resident, the nonresident's place on the eligible list depends upon his grade on the examination.

"Thus the nonresident has substantially the same chance, opportunity, or access to city employment as the city resident. This is all that is required by the civil and political rights provisions of the Michigan Constitution."

*(f) Conclusion—No Constitutional Right to Work for City of Detroit While Living Elsewhere.*

This Court has not hesitated to strike down classifications based upon residence or business location in licensing cases. See, *Chaddock* v. *Day* (1889), 75 Mich 527; *Brooks* v. *Mangan* (1891), 86 Mich 576; *City of Saginaw* v. *Saginaw Circuit Judge* (1895), 106 Mich 32; *Allport* v. *Murphy* (1908), 153 Mich 486; *Goldstein* v. *City of Hamtramck* (1924), 227 Mich 263; *Cook Coffee Co.* v. *Village of Flushing*

(1934), 267 Mich 131; and *Colonial Baking Co.* v.
*City of Fremont* (1941), 296 Mich 185.

Governmental interference with private employ-
ment has also been stricken down—see *Construction
and General Laborers Union Local 563 AFL–CIO* v.
*City of St. Paul* (1965), 270 Minn 427 (134 NW2d
26)—but residential requirements in the field of
public employment have been upheld. *Surry* v. *City
of Seattle* (1942), 14 Wash 2d 350 (128 P2d 322);
*Ballard* v. *Rice* (1938), 167 Misc 826 (4 NYS2d 806),
*affirmed* 254 App Div 733 (6 NYS2d 92), *appeal
denied* 255 App Div 863 (6 NYS2d 441), *affirmed*
280 NY 593 (20 NE2d 28); *Marcellus* v. *Kern* (1939),
170 Misc 281 (10 NYS2d 73); *Denton* v. *City and
County of San Francisco* (1953), 119 Cal App 2d
369 (260 P2d 83); *Kennedy* v. *City of Newark*
(1959), 29 NJ 178 (148 A2d 473); *Berg* v. *City of
Minneapolis* (1966), 274 Minn 277 (143 NW2d 200);
*Salt Lake City Fire Fighters Local 1645* v. *Salt Lake
City* (1969), 22 Utah 2d 115 (449 P2d 239), *cert. den.,*
395 US 906 (89 S Ct 1748, 23 L Ed 2d 220).

Are the high courts of our land observing a dis-
tinction without a difference?  Is there any real
difference between the sale of goods and the sale of
employment services?  These questions were pro-
pounded by the trial judge.  To them we might add
the query—Is a residence requirement a mere
remnant of feudalism or sound administration to
secure from a city employee better performance,
community pride, interest and participation in city
affairs, payment of city taxes, and so on?  With
the trial judge, we conclude that all of these ques-
tions are debatable.

Therefore, the question of whether or not to make
residence within a city a condition of public em-
ployment is one which must be largely addressed to
the legislative branch of government.  This is not

to say that under all circumstances such a requirement would be reasonable and valid. See, for example, *State, County & Municipal Employees Local 339* v. *City of Highland Park* (1961), 363 Mich 79.

The Court of Appeals is reversed. The trial court is affirmed. No costs, a public question being involved.

T. E. Brennan, C. J., and Dethmers, Kelly, Black, T. M. Kavanagh, and T. G. Kavanagh, JJ., concurred with Adams, J.