DETROIT POLICE LIEUTENANTS AND SERGEANTS
ASSOCIATION v CITY OF DETROIT

1. MUNICIPAL CORPORATIONS—LABOR RELATIONS—RESIDENCE REQUIRE-
   MENTS—PUBLIC EMPLOYMENT.

   Residential requirements for public employment have their basis
   in the concept that public employment is a privilege, and that a
   civil servant can acquire no vested right to his job.

2. LABOR RELATIONS—MUNICIPAL CORPORATIONS—RESIDENCE REQUIRE-
   MENTS—COLLECTIVE BARGAINING—POLICEMEN.

   A residency requirement is a mandatory subject of collective
   bargaining between a police officers' association and a city
   despite the enactment of an ordinance requiring residency
   (Detroit ordinances, 327-G).

3. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—
   DUE PROCESS.

   An ordinance may be constitutional on its face and yet work a
   deprivation of due process as it is applied in a particular
   situation.

4. MUNICIPAL CORPORATIONS—ORDINANCES—EQUITY—ESTOPPEL.

   Estoppel will not operate to bar enforcement of an ordinance,
   absent exceptional circumstances.

5. MUNICIPAL CORPORATIONS—ORDINANCES—RESIDENCE REQUIRE-
   MENTS—WAIVER—POLICEMEN—CONSTITUTIONAL LAW.

   A residency ordinance of the City of Detroit may not be applied
   to those police officers who were given express written permis-
   sion by the police commissioner to live outside the city before
   the ordinance was enacted where the policemen justifiably

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions § 247.

   Residence or inhabitancy within district or other political unit for
   which he is elected or appointed as a necessary qualification of
   officer or candidate, in absence of express provision to that effect.
   120 ALR 672.

[3] 16 Am Jur 2d, Constitutional Law § 555.

[4] 28 Am Jur 2d, Estoppel and Waiver § 128 *et seq.*

relied upon the permission and it would be unreasonable and unconstitutional to uproot the policemen and force them to re-enter the city (Detroit ordinances, 327-G).

Appeal from Wayne, Roland L. Olzark, J. Sub-mitted Division 1 June 25, 1974, at Detroit. (Docket No. 17238.) Decided November 26, 1974. Leave to appeal applied for.

Complaint by the Detroit Police Lieutenants and Sergeants Association and Sergeants Jack Holt, Arthur Howison, and Roy Daugherty against the City of Detroit and the Detroit Police Commis-sioner, John F. Nichols, for a declaration of rights and an injunction to prevent application of a residency ordinance. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Armand D. Bove,* for plaintiffs.

*Robert Reese,* Acting Corporation Counsel, and *John R. McKinlay, Victor G. Marrocco,* and *Richard L. Minter,* Assistants Corporation Counsel, for defendant.

Before: BASHARA, P. J., and DANHOF and CHURCHILL,* JJ.

DANHOF, J. Plaintiffs are members of the police department of the City of Detroit who reside out-side of the geographic boundaries of the city. They instituted an action seeking a declaration of rights and an injunction to forestall the enforcement of the residency requirement created by City of De-troit Ordinance 327-G. Plaintiffs are among the remnant of a dwindling number, reduced from 24 to 16 by death, resignation and retirement, who

---

* Circuit judge, sitting on the Court of Appeals by assignment.

had been given written permission to live outside the city before the residency ordinance was enacted. The trial court wrote an opinion concluding that plaintiffs were bound by the ordinance and a judgment of no cause of action was entered against them.

Prior to the advent of Ordinance 327-G, residency was governed exclusively by the pertinent police department rules promulgated by the police commissioner acting under the authority given to him by Title 4, ch 21, § 5 of the charter of the City of Detroit. All members of the force were required to live within the city by Detroit Police Department Rules, ch 3, § 48, also referred to as § 256 of the Detroit Police Manual. However, a memorandum dated September 8, 1954 to all members of the department from then Police Commissioner Edward S. Piggins stated his intention to give the residency rule "a liberal interpretation". The memorandum further stated that although a showing of "unusual necessity" or "hardship" would be required, each request to live outside the city would "be treated as the basis of its own merits". This policy, while never formulized as an amendment to the residency rule, continued in effect under Police Commissioner Ray Girardin. In March, 1968, the plaintiffs' requests to live outside the corporate limits of the City of Detroit were given written approval by Commissioner Girardin. Acting in reliance upon the specific determination made by the commissioner, the only rule-making authority at that time to have imposed a residency regulation, plaintiffs established homes and became members of various communities neighboring the City of Detroit.

In June, 1968, an ordinance regulating the residency of city employees was passed by the Common Council and signed by the mayor. This ordi-

nance, § 2-1-1.3 of the Municipal Code of the City of Detroit, being City of Detroit Ordinance 327-G, came under immediate and prolonged attack in the courts. The constitutionality of the ordinance was eventually upheld by the Michigan Supreme Court in *Detroit Police Officers Association v Detroit*, 385 Mich 519; 190 NW2d 97 (1971). Following this decision, plaintiffs were ordered by Commissioner John Nichols in a letter dated February 22, 1973 to establish residency in the city or lose their jobs. Plaintiffs promptly brought this action, and the trial court concluded in a written opinion that plaintiffs had no right to live outside while continuing to work for the city. Plaintiffs' request for injunctive relief to prevent the enforcement of the residency ordinance was denied and they appeal. We reverse.

Residential requirements for public employment have their basis in the concept that such employment is a privilege, and that a civil servant can acquire no vested right to his job. See 1 OAG, 1959–1960, No. 3324, p 211 (November 13, 1959); 3 McQuillin, Municipal Corporations (3d ed), § 12.58, p 258. The question of whether or not residency requirements serve any sound purpose was characterized as "debatable" in *Williams v Civil Service Commission of the City of Detroit*, 383 Mich 507, 517; 176 NW2d 593, 598 (1970). Justice Adams writing for a unanimous Supreme Court went on to say that the question must be answered largely by the legislative branch of government, but he cautioned that "This is not to say that under all circumstances such a requirement would be reasonable and valid."

As noted, the residency ordinance under discussion here was held by the Michigan Supreme Court to be constitutional. That holding was reaf-

firmed in *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), in which it was decided that the residency requirement is a mandatory subject of collective bargaining despite the enactment of the ordinance. This determination does not foreclose continued consideration of constitutional challenges; an ordinance may be constitutional on its face and yet work a deprivation of due process as it is applied in a particular situation. This possibility was alluded to in the previously quoted excerpt from *Williams v Civil Service Commission of the City of Detroit, supra,* in which Justice Adams cites *State, County & Municipal Employees Local 339 v Highland Park,* 363 Mich 79; 108 NW2d 898 (1961). In *Highland Park,* the Supreme Court concluded that a residency ordinance "was unconstitutional because it was arbitrary and unreasonable" when applied to those municipal employees who lived outside the city at the time the ordinance was enacted. This conclusion was reached independent of a determination as to the constitutionality of the ordinance in general.

The residency ordinance in *Highland Park* was unconstitutional as it applied to certain of the plaintiffs who lived outside the city because there existed insufficient adequate housing within the city to accommodate these persons. Circumstances unique to the plaintiffs and separate from the ordinance itself made the application of the ordinance to the plaintiffs unreasonable. Similarly in the case at bar, circumstances unique to the plaintiffs and separate from the ordinance makes the application of the ordinance to the plaintiffs unreasonable and invalid. These circumstances consist of the express written waiver of the residency rule by the police commissioner, and the plaintiffs'

justifiable reliance upon that waiver. To now up-root these plaintiffs and to force them to re-enter the city thereby destroying established patterns of family life for the sake of the uniform enforcement of the residency ordinance is no less unreasonable and unconstitutional than the threatened effect of the application of the ordinance to the plaintiffs in *Highland Park.*

Plaintiffs strenuously argue that the defendants are estopped to enforce the residency ordinance against them. As a general rule, estoppel will not operate to bar enforcement of an ordinance, absent exceptional circumstances. *Center Line v Metropolitan Renewal Corp,* 15 Mich App 545; 166 NW2d 824 (1969). Such exceptional circumstances were found to exist in *Township of Pittsfield v Malcolm,* 375 Mich 135; 134 NW2d 166 (1965). In that case, defendants received a letter from the township supervisor expressing his opinion that their proposed project conformed to the zoning ordinance. They obtained a building permit and proceeded to construct costly improvements and to operate a dog kennel. Thereafter, the township sought an injunction to enforce the zoning ordinance which in fact disallowed use of the property for that purpose. The trial court declined to issue the injunction, and the Supreme Court affirmed concluding that although the zoning ordinance was valid, the township could not enforce it against the defendants because an estoppel had arisen. Emphasizing the equitable nature of the proceedings, the Court in *Malcolm* concluded:

"We regard the circumstances as so exceptional in this case as to require an exception be made to the general rule. * * * While no factor is in itself decisive of the case, the entire circumstances, viewed together, present compelling reasons why equity should refuse

plaintiff's request for injunction. To do otherwise would be contrary to equity and good conscience." 375 Mich 148; 134 NW2d 172–173.

Plaintiffs in the present case are accused of being in violation of an ordinance which had not been enacted when they were allowed to leave the city. Here, the city did not merely fail to enforce an ordinance, but, acting through the commissioner, it gave positive sanction to the plaintiffs' actions. Under these exceptional circumstances, to do otherwise than to enjoin the enforcement of the ordinance would be contrary to equity and good conscience. Therefore, we hold that the City of Detroit residency Ordinance 327-G may not be applied to those few officers who were living outside the city with permission of the commissioner before the ordinance was enacted.

Reversed and remanded for further proceedings consistent with this opinion. Costs to plaintiffs.

All concurred.