WEXFORD COUNTY PROSECUTOR v PRANGER

Docket No. 77-2535. Submitted January 6, 1978, at Grand Rapids.—
Decided May 9, 1978.

Burton A. Hines, Jr., the Wexford County Prosecuting Attorney,
commenced an action against Robert Pranger, Deane Frier, and
others, as members of the Cadillac City Commission seeking a
declaratory judgment that closed sessions by the commission be
limited and that a municipal employee residency policy that
resulted from a closed session of the commission be declared
invalid, and for an injunction to enjoin further noncompliance
with the state's open meetings statute. The Wexford Circuit
Court, Frank H. Miltner, J., held that the closed session vio-
lated the open meetings statute and granted the injunctive
relief requested by the plaintiff. Defendants appeal. *Held:*

The closed session was held in violation of Michigan's Open
Meetings Act, however, the facts do not justify the issuance of
an injunction. The injunction is vacated.

Affirmed in part, reversed in part.

R. M. MAHER, J., concurred in part and dissented in part. He
wrote that the act regarding an action to compel compliance
with the Open Meetings Act or to enjoin noncompliance with
the act provides that, if a public body is not complying with the
act, the prosecuting attorney of the county in which the public
body serves may commence a civil action to enjoin further
noncompliance with the act and, therefore, such relief should
be granted when a public body fails to comply with the act. He
dissented from that portion of the majority's opinion which
vacated the injunction.

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS—LABOR RELATIONS—OPEN MEETINGS ACT
—PUBLIC MEETINGS—EXCEPTIONS—STATUTES.
All meetings of the public bodies described in the Open Meetings

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and other
Political Subdivisions § 161.
[4] 42 Am Jur 2d, Injunctions §§ 40, 48, 49.

Act shall be open to the public; the only exceptions for the specified public bodies to meet in closed session are the eight situations defined in the act (MCL 15.261 *et seq.;* MSA 4.1800[11] *et seq.).*

2. Municipal Corporations—Open Meetings Act—Interpretation —Exceptions—Closed Meetings—Statutes.

Michigan's Open Meetings Act is entitled to a broad interpretation to promote openness in government, therefore, the statute which provides eight exceptions for specified public bodies to meet in closed session should be strictly construed to limit the situations that are not open to the public (MCL 15.261 *et seq.;* MSA 4.1800[11] *et seq.).*

3. Municipal Corporations—Open Meetings Act—Closed Meetings—Collective Bargaining—Interpretation—Statutes.

The section of the Open Meetings Act regarding closed sessions of public bodies for strategy and negotiation sessions connected with collective bargaining permits closed strategy sessions only when negotiation of a labor agreement is in progress or about to commence; negotiation sessions under this section refer to actual collective bargaining sessions between employer and employee; therefore, a closed session of a city commission at which a new residency policy for city employees was formulated was held in violation of the act where collective bargaining on the contracts involved was not to begin for three months thereafter (MCL 15.268; MSA 4.1800[18]).

4. Injunction—Remedies—Extraordinary Remedies—Remedies at Law—Irreparable Injury.

Injunctive relief is an extraordinary remedy which issues only when justice requires and there is not an adequate remedy at law, and when there is real and imminent danger of irreparable injury.

Concurrence in part, Dissent in part by R. M. Maher, J.

5. Municipal Corporations—Open Meetings Act—Noncompliance —Prosecutors—Injunctions—Statutes.

*The Open Meetings Act provides that if a public body is not complying with the act the prosecuting attorney of the county in which the public body serves may commence a civil action to enjoin further noncompliance with the act (MCL 15.271; MSA 4.1800[21]).*

*Burton A. Hines, Jr.,* Prosecuting Attorney, for plaintiff.

*Edward W. Ten Houten,* for defendants.

Before: D. F. WALSH, P. J., and R. M. MAHER and BEASLEY, JJ.

BEASLEY, J. This case involves interpretation of the Open Meetings Act of 1977.[1]

At the regular meeting of May 9, 1977, the Cadillac City Commission recessed and held a closed meeting to discuss the city residency policy for city employees. The closed meeting, which lasted slightly over an hour, was held at the request of the city manager with the approval of the city attorney. Then the commission resumed in open meeting, announced a new residency policy and indicated an ordinance would be formulated to implement the policy.

In 1967, the city had adopted a residency policy which permitted municipal employees to reside in four adjoining townships in addition, of course, to residency in the city.

In 1974, in a collective bargaining agreement obtained by way of statutory compulsory arbitration, the police officers association succeeded in getting permission to reside in four additional townships outside of the city. In March, 1977, a fireman sought permission to reside permanently in Herring Township, which had been one of the four townships in which residence was permitted under the 1967 policy.

Although the labor contract with the firemen does not cover residency, the 1967 policy had been

[1] MCL 15.261 *et seq.;* MSA 4.1800(11) *et seq.,* effective March 31, 1977.

altered previous to the labor contract to prohibit firemen from living outside the city.

On May 24, 1977, plaintiff prosecutor commenced action against defendant city commission for a declaratory judgment limiting closed sessions in these circumstances to the time of actual negotiations, invalidating the policy resulting from the closed session, and enjoining noncompliance.

Defendants filed a motion for summary judgment, plaintiff answered and also requested summary judgment. The parties agreed the case could be decided on the pleadings and exhibits, and the trial court then rendered an opinion that the closed session violated the open meetings statute and that an injunction would be granted preventing "further discussion on ordinance matters under the guise of collective bargaining negotiations".

Defendants appeal as of right.

The issues to be resolved are: was the closed session of the Cadillac City Commission on May 9, 1977, at which a new residency policy for city employees was formulated, held in violation of Michigan's Open Meetings Act, and, if so, do the facts justify issuance of an injunction?

Michigan's new Open Meetings Act replaces the repealed 1968 statute which had required certain governing bodies to be open to the public at any meetings where public action was taken. The new sunshine law[2] provides that *all meetings* of the public bodies described in the statute shall be open to the public. The *only* exceptions where the speci-

---

[2] The identification of sunshine with open government was a result of Fla Stat Ann Sec 286.011, which is entitled "Government in the Sunshine Law". The designation apparently is an attempt to characterize government under the statute as government operating in the sunshine of public scrutiny rather than the shadows of bureaucratic secrecy.

fied public bodies may meet in closed session are the eight situations defined in § 8.[3]

In some states, the legislatures have expressed in their statutes a desire that their new sunshine laws be interpreted liberally in favor of openness.[4] While the Michigan Legislature has not chosen to expressly so provide, in the light of the provisions newly enacted and of the legislative history,[5] we interpret the new open meeting legislation with similar liberality. In so doing, we construe the closed session exceptions strictly to limit the situations that are not open to the public.

At issue here is only subsection (c) of § 8, which provides:

"Sec. 8. A public body may meet in closed session only for the following purposes:

\*  \*  \*

"(c) For strategy and negotiation sessions connected with the negotiation of a collective bargaining agree-

[3] MCL 15.268; MSA 4.1800(18).

[4] 73 Mich L Rev 1192, n 1321 (1975):

"*See, e.g.,* Ind. Code § 5-14-1-1 (1971); Mont. Rev. Codes Ann. § 82-3401 (1966); Wash. Rev. Code § 42.30.910 (1974). *See also* Common Cause Proposed Act, *supra* note 1309, § 1; 36 Op. Ore. Atty. Gen. 543, 544 (1973). *Cf.* Ark. Stat. Ann. § 12-2802 (1968); Cal. Govt. Code §§ 11120 (West Supp. 1975), 54950 (West 1966); Ill. Rev. Stat. ch. 102, § 41 (1973); Me. Rev. Stat. Ann. tit. 1, § 401 (1964); Nev. Rev. Stat. § 241.010 (1973); N.J. Stat. Ann. § 10:4-1 (Supp. 1974); N.C. Gen. Stat. § 143-318.1 (1974); Utah Code Ann. § 52-4-1 (1970); Wis. Stat. Ann. § 66.77(1) (1974 West's Wis. Legis. Serv. 332)."

[5] Sunshine laws are frequently considered a recent innovation in government, but they are not new to Michigan, which adopted sunshine legislation as early as 1895. As indicated by C. J. McNeil, Director, Michigan Legislative Service Bureau, in a 1962 letter, "section 5.1703 of chapter 48 of the Michigan code is our Compiled Law section number 88.7, and the language is in the original Act No. 215 of the Public Acts of 1895." The section referred to has to do with meetings of city councils and states: "All meetings and sessions of the council shall be public."

For background of events leading to the passage of the Michigan Open Meetings Act of 1977, *see Sunshine or Shadows: One State's Decision,* 1977 Det Col L Rev 613, 619–621.

ment when either negotiating party requests a closed hearing."[6]

In the within case, the stated reason for the closed session was to discuss the matter of residency of municipal employees, including policemen and firemen, each of which had separate labor contracts which did not expire until December, 1977. Immediately following the closed meeting, the commission resumed the open meeting and announced a new policy, requiring all city employees to reside in the city as of January 1, 1978, except those then living outside the city.

As a result of the trial court judgment and injunction, no further action has been taken by defendant commission.

We are not without sympathy for the plight of the legislative bodies of home rule cities and their attorneys in dealing with required residency of municipal employees questions.[7] The recent history of residence requirements as a condition of municipal employment indicates it has become a mandatory subject of collective bargaining.

---

[6] MCL 15.268; MSA 4.1800(18).

[7] See the following cases, all of which deal with the constitutionality, validity and applicability of residency provisions in municipal charters, ordinances, policies and labor agreements in varying ways.

*State, County & Municipal Employees Local 339 v Highland Park,* 363 Mich 79; 108 NW2d 898 (1961), *Williams v Detroit Civil Service Commission,* 383 Mich 507; 176 NW2d 593 (1970), *rev'g* 15 Mich App 55; 166 NW2d 309 (1968), *Park v Lansing Board of Education,* 32 Mich App 752; 189 NW2d 60 (1971), *Detroit Police Officers Association v Detroit,* 385 Mich 519; 190 NW2d 97 (1971), *Detroit Police Officers Association v Detroit,* 41 Mich App 723; 200 NW2d 722 (1972), *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), *rev'g in part* and *aff'g in part, Detroit Police Lieutenants and Sergeants Association v Detroit,* 56 Mich App 617; 224 NW2d 728 (1974), *Gantz v Detroit,* 392 Mich 348; 220 NW2d 433 (1974), *Rockwell v Crestwood School District Board of Education,* 393 Mich 616; 227 NW2d 736 (1975), *Dearborn Fire Fighters Union Local No 412, IAFF v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975), *Pontiac Police Officers Association v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976).

We are also aware that with respect to police unions and fire unions, where collective bargaining reaches an impasse, compulsory arbitration is available to impose a labor contract on the parties by operation of law.[8] The labor contract between Cadillac police officers and the City of Cadillac was arrived at by compulsory arbitration, which labor contract contains an expanded residence provision, *i.e.,* four additional townships were added to the four specified in the 1967 policy.[9] It seems safe to conclude that the residency provision in the labor agreement resulting from compulsory arbitration was imposed over the objection of and against the wishes of the City of Cadillac.

Against this background, we believe that defendant commissioners should, at some stage, be permitted to meet in closed session to discuss and arrive at strategy for its collective bargaining position relating to residency of municipal employees without being required to disclose every innuendo and consideration to the adversary unions. We would not consider such a desire to be a guise to avoid compliance with the sunshine statute.

At the same time, we indicate our whole-hearted approval of the objectives of the open meeting law.

In Florida, the supreme court has interpreted that state's statute as providing that preliminary labor negotiations may be conducted in private.[10] It

---

[8] MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.*

[9] *See,* MCL 15.263(8)(e); MSA 4.1800(13)(8)(e), which provides the Open Meetings Act shall not apply to an arbitrator or arbitration panel "when deliberating the merits of a case".

[10] *Bassett v Braddock,* 262 So 2d 425, 426–428 (Fla, 1972). The colorful language employed by the Florida Court is instructive:

"Such 'intensity' of the 'sunrays' under the statute, as urged by this appeal, could cause a damaging case of 'sunburn' to these employees or to the public which elected the Board.

\* \* \*

"[M]eaningful collective bargaining \* \* \* would be destroyed if full

may be that our Legislature should broaden the exception in our statute to permit closed sessions to formulate collective bargaining plans at any time, but we consider that a legislative matter better decided within the framework of the legislative process.

As indicated, we believe the Michigan Open Meetings Act of 1977 is entitled to a broad interpretation to promote openness in government.

We interpret § 8(c) to permit closed *strategy* sessions only when negotiation of a labor agreement is in progress or about to commence. In the within case, there was involved a mandatory collective bargaining subject. Collective bargaining was not to begin until August for renewal of the labor contract which was to expire December 31. Under the circumstances, we do not consider the May meeting of the city commission qualified for exemption from the provisions of the Open Meetings Act. We interpret *negotiation* sessions under § 8(c) to refer to actual collective bargaining sessions between employer and employee.

Insofar as the declaratory judgment finds the closed session of May 9, 1977, in violation of the open meetings statute, we affirm.

---

publicity were accorded at each step of the negotiations. * * * The public's representatives must be afforded at least an equal position with that enjoyed by those with whom they deal. The public should not suffer a handicap at the expense of a purist view of open public meetings, so long as the ultimate debate and decisions are public and the 'official acts' and 'formal actions' specified by the statute are taken in open 'public meetings.'

\* \* \*

"Every action emanates from thoughts and creations of the mind and exchanges with others. These are perhaps 'deliberations' in a sense but hardly demanded to be brought forward in the spoken word at a public meeting. To carry matters to such an extreme approaches the ridiculous; it would defeat any meaningful and productive process of government. One must maintain perspective on a broad provision such as this legislative enactment, in its application to the actual workings of an active Board fraught with many and varied problems and demands." (Footnotes omitted.)

As to the question of whether the facts in the within case justify issuance of an injunction, we note that injunctive relief is an extraordinary remedy which issues only when justice requires and there is not adequate remedy at law, and when there is *real* and *imminent danger* of irreparable injury.

On the record before us, we decline to find defendant commissioners' actions a guise or a subterfuge. On the contrary, we believe defendant commissioners acted in good faith in reliance upon advice from their city attorney.[11]

Under the circumstances of this case, we see no reason to continue the injunction. We assume defendant commissioners will comply with the open meetings law as its meaning unfolds. The injunction will be vacated.

Affirmed in part, reversed in part; no costs, a public question being involved.

D. F. WALSH, P. J., concurred.

R. M. MAHER, J. *(concurring in part, dissenting in part).* I dissent from that portion of the majority's opinion which vacates the injunction. The plain language of the Open Meetings Act persuades me that the trial court should be affirmed in full.

In MCL 15.271; MSA 4.1800(21), the act provides that if a public body is not complying with the act, the prosecuting attorney of the county in which the public body serves may commence a civil

---

[11] After all, the Open Meetings Act became effective March 31, 1977, and the closed session complained of occurred less than six weeks thereafter on May 9, 1977. This timing, together with obtaining legal advice from the city attorney, does not indicate any pattern of intentional violation such as to require injunctive relief.

action to enjoin further noncompliance with the act.

The majority agrees that the act has been violated by defendants' noncompliance. Yet my colleagues deny the specific relief made available in the statute. They do not and cannot say that the injunction was improperly granted, for it was not. Rather, the majority apparently puts its faith in the defendants and assumes they will comply with the Open Meetings Act. That relief, if one may call it such, is, however, not the relief afforded by the statute nor is it the relief requested by the prosecuting attorney.

The majority cites no proper reason for its vacation of the injunction. The statute provides for injunctive relief when a public body fails to comply with the act. The injunction against the members of the Cadillac City Commission enjoining further noncompliance with the act should be continued.