*In re* KAPCIA

1. JUDGES—JUDICIAL TENURE COMMISSION—CENSURE OF JUDGE—SUS-
   PENSION OF JUDGE—RETIREMENT OF· JUDGE—REMOVAL OF JUDGE
   —CONSTITUTIONAL LAW.

   A section of an article of the Michigan Constitution contemplates
   that after appropriate proceedings and findings the Judicial
   Tenure Commission *may* make a "recommendation" to the
   Michigan Supreme Court and on such a recommendation that
   Court *"may* censure, suspend with or without salary, retire or
   remove" a judge on grounds specified in the Constitution (Const
   1963, art 6, § 30).

2. JUDGES—MISCONDUCT OF JUDGE—CONSTITUTIONAL LAW—JUDICIAL
   TENURE COMMISSION—SUPREME COURT—REMOVAL OF JUDGE—
   DISCIPLINE OF JUDGE.

   However serious a judge's misconduct may have been there are
   no automatic removals from judicial office under the constitu-
   tional provision establishing the Judicial Tenure Commission;
   the Tenure Commission has a choice whether and to what
   extent to recommend discipline and the Michigan Supreme
   Court has a choice whether and to what extent to impose
   discipline on the erring judge (Const 1963, art 6, § 30).

3. JUDGES—MISCONDUCT OF JUDGE—CONSTITUTIONAL LAW—JUDICIAL
   TENURE COMMISSION—SUPREME COURT—STATE BAR GRIEVANCE
   BOARD—CENSURE OF JUDGE—SUSPENSION OF JUDGE—RETIRE-
   MENT OF JUDGE—REMOVAL OF JUDGE.

   Michigan constitutional provision establishing the Judicial Ten-
   ure Commission contemplates individualized determinations by
   the Judicial Tenure Commission and the Michigan Supreme

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judges §§ 18, 19.
[2] 46 Am Jur 2d, Judges §§ 18, 79.
[3, 5, 6] 46 Am Jur 2d, Judges §§ 18, 19, 79.
[4] 7 Am Jur 2d, Attorneys at Law §§ 65–69.
[7, 8] 7 Am Jur 2d Attorneys at Law § 47. Misconduct in an official
capacity as judicial officer as basis for disbarment, suspension, or
other disciplinary action against attorney. 53 ALR2d 305.

Court of misconduct of a judge based on the entire factual context and this cannot be avoided by the Commission or the Court assimilating the decision of another body such as the State Bar Grievance Board; that constitutional provision contemplates that whenever the Judicial Tenure Commission acts, and whenever the Michigan Supreme Court acts on the recommendation of the Judicial Tenure Commission, that it will make a choice among the constitutionally stated possible alternative penalties: censure, suspension with or without salary, retirement or removal (Const 1963, art 6, § 30).

4. JUDGES—CANONS OF ETHICS—JUDICIAL TENURE COMMISSION—SUPREME COURT—ATTORNEY AND CLIENT—DISCIPLINARY ACTION—STATE BAR GRIEVANCE BOARD—SUSPENSION OF ATTORNEY.

Violation of the Canons of Ethics does not necessarily warrant disciplinary action through the Judicial Tenure Commission; each case is to be judged in the light of all the circumstances; the Judicial Tenure Commission's responsibility, to consider all the circumstances in deciding whether to recommend any disciplinary action, cannot be avoided by viewing the matter as a *fait accompli* by the action of the State Bar Grievance Board in suspending an attorney who was a probate judge, nor can the Michigan Supreme Court, by total reliance on the decision reached in State Bar grievance proceedings, escape its responsibility to exercise an individualized judgment (GCR 1963, 932.4[d]).

5. JUDGES—DISCIPLINE OF JUDGE—ATTORNEY AND CLIENT—DISBARMENT—SUSPENSION OF ATTORNEY—CONSTITUTIONAL LAW—JUDICIAL TENURE COMMISSION.

Loss or suspension of a license to practice law is not one of the occurrences, enumerated in the constitutional provision establishing the Judicial Tenure Commission, which triggers the Commission's power to recommend disciplinary action against a judge; it does not constitute "conduct that is clearly prejudicial to the administration of justice" as loss or suspension of a license to practice law is not "conduct"; it is a consequence imposed by the State Bar Grievance Board for misconduct by a lawyer (Const 1963, art 6, § 30).

6. JUDGES—DISCIPLINE OF JUDGE—REMOVAL OF JUDGE—JUDICIAL TENURE COMMISSION—DISCRETION—SUPREME COURT—CONSTITUTIONAL LAW—ATTORNEY AND CLIENT—DISBARMENT.

Discipline of judges is confided to the discretion of the Judicial Tenure Commission and the Michigan Supreme Court under a

section of an article of the Michigan Constitution; it is left to case-by-case exercise of discretion to decide whether a justice or judge whose conduct results in loss of his right to practice law should be disciplined by removing him from office (Const 1963, art 6, § 30).

7. JUDGES—MISCONDUCT IN OFFICE—PREJUDICIAL CONDUCT—CONSTI-
    TUTIONAL LAW—COURT RULES.
    Conduct of a judge other than "misconduct in office" may be "conduct that is clearly prejudicial to the administration of justice" (Const 1963, art 6, § 30; GCR 1963, 932.4).

8. JUDGES—PROBATE JUDGE—ATTORNEY AND CLIENT—GRIEVANCE PRO-
    CEEDINGS—PREJUDICIAL CONDUCT—CONSTITUTIONAL LAW.
    Although the conduct which gave rise to the State Bar grievance proceedings against a probate judge was conduct as a practicing lawyer unrelated to judicial duties, such non-judicial conduct might be "conduct that is clearly prejudicial to the administration of justice" (Const 1963, art 6, § 30).

Review by the Supreme Court of a recommendation of an order of removal by the Judicial Tenure Commission. Submitted January 5, 1973. (No. 11 January Term 1973, Docket No. 54,141.) Decided March 27, 1973.

The Judicial Tenure Commission recommended an order of removal of Probate Judge Norman F. Kapcia from judicial office. On consideration by the Supreme Court, complaint dismissed without prejudice.

*Bruce D. White,* for the Judicial Tenure Commission.

*Donald G. Jennings,* for respondent.

LEVIN, J. Norman F. Kapcia is a probate judge in a county where the probate judge is permitted to practice law.[1]

The State Bar Grievance Board found after pro-

---

[1] See MCLA 701.3; MSA 27.3178(3).

ceedings before the Board that Judge Kapcia was guilty of misconduct after he became a judge in his representation as a lawyer of clients and suspended him "from the practice of law in this State for a period of six (6) months, and until reinstated by order of the Grievance Board." Judge Kapcia did not appeal and the Grievance Board's order of suspension has become final. Judge Kapcia has not yet sought to be reinstated as a lawyer.

After the Grievance Board's order was no longer appealable to this Court, the Judicial Tenure Commission filed a complaint against Judge Kapcia pursuant to Const 1963, art 6, § 30,[2] which establishes the Tenure Commission, and GCR 1963, 932, which promulgates rules for the operation of the Commission. Subsequently, we ordered the suspension of Judge Kapcia from office as a probate judge without loss of salary during the pendency of these proceedings and until the further order of this Court.

After hearings, the Tenure Commission concluded "as a matter of law" that the suspension of

---

[2] "Sec. 30 (1) A judicial tenure commission is established consisting of nine persons selected for three-year terms as follows: Four members shall be judges elected by the judges of the courts in which they serve; one shall be a court of appeals judge, one a circuit judge, one a probate judge and one a judge of a court of limited jurisdiction. Three shall be members of the state bar who shall be elected by the members of the state bar of whom one shall be a judge and two shall not be judges. Two shall be appointed by the governor; the members appointed by the governor shall not be judges, retired judges or members of the state bar. Terms shall be staggered as provided by rule of the supreme court. Vacancies shall be filled by the appointing power.

"(2) On recommendation of the judicial tenure commission, the supreme court may censure, suspend with or without salary, retire or remove a judge for conviction of a felony, physical or mental disability which prevents the performance of judicial duties, misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice. The supreme court shall make rules implementing this section and providing for confidentiality and privilege of proceedings." Const 1963, art 6, § 30.

Judge Kapcia's license to practice law effected "a forfeiture of his office" and required his "removal" from office, and recommended that we remove him from office.[3] Judge Kapcia petitioned our Court for

---

[3] The following are relevant portions of the decision of the Commission:

"6. Const 1963, Art VI, Sec 19 provides as follows:

'The Supreme Court, the Court of Appeals, the Circuit Court, the Probate Court and other courts designated as such by the legislature shall be courts of record and each shall have a common seal. Justices and judges of courts of record must be persons who are licensed to practice law in the state. No person shall be elected or appointed to a judicial office after reaching the age of seventy years.'

"7. 1954 PA 116, Sec 431, as amended by 1963 PA (2d) 58; MCLA 168.431; MSA 6.1431, provides as follows:

'No person shall be eligible to the office of judge of probate who is not a qualified elector of the county in which election is sought, as provided in section 16 of Art VI of the State Constitution, who is not licensed to practice law in this state except as provided in section 7 of the Schedule and Temporary Provisions of the State Constitution and who at the time of election is seventy years of age or older.'

"8. Subsequent to the entry of the [Grievance Board's] order of suspension and the effective date thereof, the Respondent continued, and presently continues, except by virtue of the Supreme Court order of interim suspension aforesaid, to hold and occupy judicial office as Probate Judge of the County of Lake, Michigan, and to perform the judicial duties and responsibilities thereof.

"9. The Commission finds as a matter of law that, by virtue of the constitutional and statutory provisions hereinbefore set forth, the requirement that Respondent be licensed to practice law in Michigan to hold the office of Probate Judge is not merely a condition precedent to election or appointment to such office, but is a continuing requirement which must be maintained without interruption during his occupancy of the office.

"10. The Commission further finds that the suspension of Respondent's license to practice law disqualified him as a matter of law from holding judicial office, and effected a forfeiture of his office as Probate Judge, and is grounds for removal from office; and that his continued occupancy of judicial office and his exercise of the duties and responsibilities thereof are clearly prejudicial to the administration of justice within the meaning and intent of Const 1963, Art VI, Sec 30 (2), and GCR 1963, 932.4 (b).

"11. The Commission further finds as a matter of law that Respondent, being disqualified from holding judicial office by virtue of such suspension, is subject to no discipline or corrective action other than removal from office.

*"RECOMMENDATION OF REMOVAL*

"THE COMMISSION HEREBY RECOMMENDS, as provided by

review. We decline to enter the recommended
order and dismiss the complaint without prejudice
to the filing of a further complaint and proceed-
ings in form and manner consistent with this
opinion.

I

The Constitution (art 6, § 30) contemplates that
after appropriate proceedings and findings the
Judicial Tenure Commission *may* make a "recom-
mendation" to the Supreme Court. On such a
recommendation the Supreme Court *"may* cen-
sure, suspend with or without salary, retire or
remove" a judge on grounds specified in the Con-
stitution.[4]

It is plain from the language of the constitu-
tional provision establishing the Tenure Commis-
sion that however serious the judge's misconduct
may have been there are no automatic removals
from judicial office under art 6, § 30. The Tenure
Commission and the Supreme Court both always
have a choice whether and to what extent—in the
case of the Commission—to recommend discipline,
and—in the case of the Supreme Court—to impose
discipline on the erring judge.

The Constitution contemplates individualized de-
terminations by the Tenure Commission and this
Court based on the entire factual context. This
cannot be avoided by the Commission or this Court
assimilating the decision of another body—in this
case the State Bar Grievance Board.

The Constitution contemplates that whenever

Const 1963, Art VI, Sec 30 (2), and GCR 1963, 932.21, that the
Honorable Norman F. Kapcia, Probate Judge of Lake County, Michi-
gan, Respondent herein, be removed from his judicial office by order
of the Supreme Court."

[4] See fn 2, *supra.*

the Judicial Tenure Commission acts—whenever this Court acts on the recommendation of the Judicial Tenure Commission—that it will make a choice among the constitutionally stated possible alternative penalties: censure, suspension with or without salary, retirement or removal.

## II

This Court has previously indicated its view that violation of the Canons of Ethics does not necessarily warrant disciplinary action through the Tenure Commission; that each case is to be judged in the light of all the circumstances. GCR 1963, 932.4(d) provides:

"Rule 932 Judicial Tenure Commission. * * *

".4 Standards of Judicial Conduct. * * *

"(d) Any conduct of a judge which is in violation of the canons of judicial ethics or the canons of ethics of the legal profession may be deemed evidence of misconduct by a judicial officer, but shall not be conclusive for determination of whether a judge has been guilty of misconduct. Extenuating circumstances may be considered to support a finding of lack of judicial misconduct warranting disciplinary action."

Thus, had the Commission commenced a proceeding against Judge Kapcia charging him with misconduct based on the acts which gave rise to the State Bar grievance proceedings, the Commission would have been obliged to consider all the circumstances in deciding whether to recommend disciplinary action. The Commission's responsibility in that regard cannot be avoided by viewing the matter as a *fait accompli.* Nor can we, by total reliance on the decision reached in the grievance proceedings, escape our responsibility to exercise an individualized judgment.

## III

The Constitution does, indeed, provide that "[j]ustices and judges of courts of record must be persons who are licensed to practice law in this state." Const 1963, art 6, § 19.

However, loss or suspension of a license to practice law is not one of the occurrences, enumerated in the constitutional provision establishing the Tenure Commission, which triggers the Commission's power to recommend disciplinary action against a judge.[5] Loss or suspension of a license to practice law does not constitute

—"conviction of a felony," or

—"physical or mental disability which prevents the performance of judicial duties," or

—"misconduct in office," or

—"persistent failure to perform his duties," or

—"habitual intemperance".

Nor does loss or suspension of a license to practice law constitute "conduct that is clearly prejudicial to the administration of justice." Loss or suspension of a license to practice law is not "conduct"; it is a consequence imposed by the State Bar Grievance Board for misconduct by a lawyer.

The cases cited by the Tenure Commission *(State v Franko,* 168 Ohio St 338; 154 NE2d 751 [1958]; *State v Stice,* 186 Kan 69; 348 P2d 833 [1960]; *State v Pierce,* 191 Wis 1; 209 NW 693 [1926]) were all *quo warranto* actions. They were not proceedings before a body empowered in the exercise of

[5] Even if Const 1963, art 6, § 30 were to be construed to mean that the imposition of discipline by the State Bar Grievance Board constitutes a ground for the imposition of discipline by the Tenure Commission, it would still be necessary, for the reasons already stated, to consider the matter in context—to focus on the conduct which gave rise to the imposition of discipline by the Grievance Board before deciding whether to recommend or impose discipline against the judge in respect to his tenure as a judge.

discretion to discipline judges. We intimate no opinion on the question whether *quo warranto* lies to test the right of a judge who has lost his license to practice law to continue to hold a judgeship.

The Tenure Commission contends that a judge who seeks to hold and exercise the powers of his judicial office after he has been suspended from the practice of law necessarily engages in "conduct that is clearly prejudicial to the administration of justice." Manifestly, this contention begs the question; it presupposes that the removal from office which the Commission seeks by these proceedings to accomplish has already occurred.

The Commission's presentation proceeds on the erroneous assumption that the Commission had no choice once it was established that Judge Kapcia had been suspended from the practice of law but to recommend his removal and that this Court, likewise, has no choice but to remove him; that, indeed, there truly is nothing before us to consider because the consideration of whether the professional misconduct charged against Judge Kapcia was proven and what to do about it ended when the order of the Grievance Board became final.

The discipline of judges is confided to the discretion of the Judicial Tenure Commission and this Court under § 30 of art 6. It is left to case-by-case exercise of discretion to decide whether a justice or judge—presumably duly licensed to practice law when he qualified as a justice or a judge—whose conduct results in loss of his right to practice law should be disciplined by removing him from office.

IV

Conduct other than "misconduct in office" may be "conduct that is clearly prejudicial to the ad-

ministration of justice." See GCR 1963, 932.4 providing in clause (a) that, "[a] judge shall be personally responsible for his own behavior," and providing in previously mentioned clause (d) that, "[a]ny conduct of a judge which is in violation of the canons of judicial ethics or the canons of ethics of the legal profession may be deemed evidence of misconduct by a judicial officer". Canon 4 of the Canons of Judicial Ethics provides that a judge's "personal behavior, not only upon the bench and in the performance of judicial duties, but also in his every day life, should be beyond reproach."[6]

Thus, although the conduct which gave rise to the State Bar grievance proceedings against Judge Kapcia was conduct as a practicing lawyer unrelated to judicial duties, such non-judicial conduct might be "conduct that is clearly prejudicial to the administration of justice."

We could not, on the present record, properly cut through to the meritorious question whether the conduct which gave rise to the grievance proceedings against Judge Kapcia was clearly prejudicial to the administration of justice. The charge lodged against Judge Kapcia by the Tenure Commission was the fact of his suspension as a lawyer, not the conduct which gave rise to such suspension.

The record so far made before the Tenure Commission does not focus upon Judge Kapcia's con-

---

[6] Other Canons of Judicial Ethics also contain limitations on a judge's extrajudicial activities. See, *e.g.,* Judicial Canon 25 (business promotions and solicitations for charity); Judicial Canon 26 (personal investments and relations); Judicial Canon 27 (executorships and trusteeships); Judicial Canon 28 (partisan politics); Judicial Canon 32 (gifts and favors); Judicial Canon 33 (social relations).

The Code of Judicial Conduct adopted by the House of Delegates of the American Bar Association August 16, 1972, which has not yet been adopted in Michigan, contains similar provisions. See Canons 2, 4, 5, 6 and 7.

duct. Nor are we presented with a recommendation by the Tenure Commission made after consideration of the circumstances of the charged conduct in awareness that the Commission enjoys discretion whether to recommend removal or some lesser penalty.

Complaint dismissed without prejudice.


T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with LEVIN, J.