GANTZ v CITY OF DETROIT

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—RESIDENCY RULE—EM-
    PLOYEES—ELIGIBILITY FOR EMPLOYMENT—WITHDRAWAL OF ELIGI-
    BILITY—DISCHARGE—SEPARATION BY DISCHARGE—SEPARATION BY
    INELIGIBILITY.

    The removal or withdrawal of a city employee's certification of
    eligibility for employment by the Detroit Civil Service Commis-
    sion because the employee did not meet its residency rule does
    not involve the commission's power to *discharge* an employee;
    while removal like discharge results in separation, it is quite a
    different action; separation by discharge is through the power
    of discipline; separation because of ineligibility is not because of
    discipline at all, it is because of the nonexistence of a *sine qua
    non* to employment.

2. MUNICIPAL CORPORATIONS—CIVIL SERVICE—POWER OF REMOVAL—
    EMPLOYEES—DISCHARGE OF EMPLOYEE—ELIGIBILITY FOR EMPLOY-
    MENT—RESIDENCY RULE.

    Power to remove an employee may be granted and exercised by
    the Detroit Civil Service Commission in some other manner
    than discharge as a disciplinary measure; probably in the
    majority of cases, it would be the department head or the
    appointing authority who would exercise the power of removal
    of an employee because normally a department head is familiar
    with the facts and circumstances and conditions relating to the
    work of the employee, he would best know whether or not any
    particular employee was producing the quantity and quality of
    work necessary for efficient operations, he would know of any

REFERENCES FOR POINTS IN HEADNOTES

[1–8, 10–12, 16–18] 15 Am Jur 2d, Civil Service §§ 21, 36.
    56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
    cal Subdivisions § 247.
[9] 15 Am Jur 2d, Civil Service §§ 6, 8–11, 16–19.
[13, 14] 15 Am Jur 2d, Civil Service §§ 41, 43–45.
[15] 15 Am Jur 2d, Civil Service §§ 8, 20, 21.
[19] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 253.

excessive tardiness or absenteeism and any mitigating circumstances connected therewith; there could be examples of perfect employees in the quality and quantity of their work record but they could lose their eligibility for continued employment in city service because they no longer met the requirements of the commission's residency rule.

3. MUNICIPAL CORPORATIONS—CIVIL SERVICE—RESIDENCY RULE—EMPLOYEES—ELIGIBILITY FOR EMPLOYMENT—CHARTER.

An applicant must meet the Detroit Civil Service Commission residency requirement to be eligible for a position in the classified service, and if the applicant is given a position he must continue to reside in the city (Detroit Charter, Title 4, ch 2, § 11; Detroit Civil Service Commission Rule VII, § 2).

4. MUNICIPAL CORPORATIONS—CIVIL SERVICE—EMPLOYEES—AUTHORITY—ENFORCEMENT OF RULES—CHARTER.

The role of the Detroit Civil Service Commission over city employees under the city charter does not end at the time of appointment to a position, but continues throughout the period of an employee's service during which the commission is directed to "investigate the enforcement" of its rules and the actions of persons employed in the city's service, from initial employment to termination (Detroit Charter, Title 4, ch 2, § 7[d]).

5. MUNICIPAL CORPORATIONS—CIVIL SERVICE—EMPLOYEES—ENFORCEMENT OF RULES—ELIGIBILITY FOR EMPLOYMENT—APPROVAL OF PAYROLL—CHARTER.

The Detroit Civil Service Commission may "investigate the enforcement" of its rules and, if through this investigation it is found that one of the conditions of eligibility for employment is not being met, it may under the city charter refuse to approve the payroll for an employee ineligible for continued employment (Detroit Charter, Title 4, ch 2, §§ 7[d], 20).

6. MUNICIPAL CORPORATIONS—CIVIL SERVICE—EMPLOYEES—ELIGIBILITY FOR EMPLOYMENT—RESIDENCE—SEPARATION BY INELIGIBILITY—VACATION OF POSITION—APPROVAL OF PAYROLL—CHARTER.

The Detroit Civil Service Commission certifies potential city resident employees, thus it naturally follows that when the employee ceases to be a city resident he ceases to be eligible for continued employment and the commission has the duty to find that the employee's position has been vacated by action of the nonresident employee who has made himself ineligible for continued employment; in effect, the position is vacated by

action of the nonresident employee, the individual is no longer an eligible certified employee, and in accordance with the city charter, the commission has a duty to disapprove the payroll of the ineligible employee (Detroit Charter, Title 4, ch 2, § 20).

7. MUNICIPAL CORPORATIONS—CIVIL SERVICE—RESIDENCY RULE—EMPLOYEES—ENFORCEMENT OF RULES—APPROVAL OF PAYROLL—CHARTER.

The Detroit Civil Service Commission's residency rule for city employees is effectively enforced by the commission being able to prohibit payment of the ineligible employee's payroll (Detroit Charter, Title 4, ch 2, § 20).

8. MUNICIPAL CORPORATIONS—CIVIL SERVICE—ENFORCEMENT OF RULES—EMPLOYEES—ELIGIBILITY FOR EMPLOYMENT—RESIDENCY RULE.

There are strong policy reasons for allowing the Detroit Civil Service Commission to enforce its rules relating to eligibility for employment; if not, any department head or hiring authority could ignore the findings of the commission and retain an employee who did not reside in the city, and this would then require the commission to institute suit to enforce its rule; the uniformity of application of the residency rule is best carried out by one central enforcer, the commission.

9. MUNICIPAL CORPORATIONS—CIVIL SERVICE—POWERS—CHARTER.

The powers of the Detroit Civil Service Commission are defined by and limited to those powers granted to it in the city charter.

10. MUNICIPAL CORPORATIONS—CIVIL SERVICE—HIRING AUTHORITY—EMPLOYEES—DISCHARGE OF EMPLOYEE—ELIGIBILITY FOR EMPLOYMENT—VACATION OF POSITION—CHARTER.

Provisions in the Detroit Charter and the Detroit Civil Service Commission rules vest in the hiring authority the power to discharge an employee, but they in no way preclude the commission from determining that a condition of eligibility for employment is not met and from finding the employee's position vacant (Detroit Charter, Title 4, ch 2, § 18; Detroit Civil Service Commission Rule X[1][2]).

11. MUNICIPAL CORPORATIONS—CHARTER—CIVIL SERVICE—EMPLOYEES—RESIDENCY RULE—ENFORCEMENT OF RULES—CONSTITUTIONAL LAW—SEPARATION OF POWERS.

The Detroit Charter authority for allowing the Detroit Civil Service Commission to enforce its residency ruling does not fall within the exception providing that "[e]xcept in the comparatively rare cases * * * where a combination of powers in a single agency was deemed to threaten, in some measure, the

respective primacies of the legislature or of the courts, the states have sustained the delegation of combined legislative, prosecutory, and judicial powers to agencies".

12. MUNICIPAL CORPORATIONS—CIVIL SERVICE—EMPLOYEES—DIS-CHARGE OF EMPLOYEE—DEPARTMENT HEAD—RESIDENCE—ELIGI-BILITY FOR EMPLOYMENT—APPROVAL OF PAYROLL—VACATION OF POSITION—DISCIPLINARY MATTERS.

The Detroit Civil Service Commission does not discharge an employee as would a department head; when an employee ceases to be a city resident, he becomes ineligible for continued employment, and the commission has a duty to refuse to approve the name of the ineligible employee on the payroll and to vacate the employee's position; disciplinary matters are left with the department heads, however, the commission retains the right to police the administration of requirements of eligibility for continued employment.

DISSENTING OPINION

T. G. KAVANAGH, LEVIN, and J. W. FITZGERALD, JJ.

13. MASTER AND SERVANT—EMPLOYEES—DISCHARGED—VACATION OF POSITION.

*There is no distinction, in practical terms, between the status of a "discharged" employee and one whose position has been "vacated"; in both cases the employment relationship is severed.*

14. JUDGES—VACATION OF OFFICE—CONSTITUTIONAL LAW—COURTS—JURISDICTION—JUDGMENT—DOMICILE.

*The vacation of judicial office mandated by the Michigan Constitution is not self-executing; until the jurisdiction of a court is properly invoked and entry of a judgment declaring the office vacant, a judge may continue to exercise his powers although he has in fact removed his domicile in violation of the constitutional provision that "[w]henever a justice or judge removes his domicile beyond the limits of the territory from which he was elected, he shall have vacated his office" (Const 1963, art 6, § 20).*

15. MUNICIPAL CORPORATIONS—CIVIL SERVICE—CHARTER—HIRING QUALIFICATIONS—EMPLOYEES.

*The Civil Service Commission of the City of Detroit derives its powers from the Charter of the City of Detroit and the charter authorizes the commission to establish minimum hiring qualifications for prospective employees of the city (Detroit Charter, Title 4, ch 2, § 11).*

16. MUNICIPAL CORPORATIONS—CIVIL SERVICE—CLASSIFICATION OF PO-
   SITIONS—EXAMINATIONS—ELIGIBILITY LISTS—RESIDENCE—DIS-
   CHARGE—TRANSFER—PROMOTIONS.

   *The authority of the Civil Service Commission of the City of Detroit is limited to: (1) classifying positions, (2) holding examinations with specific limitations as to residence which relates only to examinations, not tenure of employment, (3) preparing an eligible list, (4) certifying names to the appointing authority, (5) disapproving discharge of provisional appointees, consenting to transfer of provisional appointees, and (6) setting aside promotions it finds were made for reasons other than the interest of the service and discharges, etc., made for political or for reasons other than the good of the service.*

17. MUNICIPAL CORPORATIONS—CIVIL SERVICE—DISCHARGE—EM-
   PLOYEES—NONRESIDENCE.

   *The appointing authority, not the Civil Service Commission of the City of Detroit, decides when, if at all, to discharge an employee; a rule of the commission, which imposes a mandate on the appointing authority and compels discharge for nonresidence, exceeds the commission's power to promulgate or enforce (Detroit Civil Service Commission Rule VII).*

18. MUNICIPAL CORPORATIONS—RESIDENCY RULE—CIVIL SERVICE—EX-
   AMINATIONS—EMPLOYEES.

   *The general residence requirement established by a rule of the Civil Service Commission of the City of Detroit as a continuing condition of employment is unrelated to the commission's powers and duties of establishing procedures and requirements for examination and selection of employees (Detroit Civil Service Commission Rule VII).*

19. MUNICIPAL CORPORATIONS—CIVIL SERVICE—CERTIFICATION OF PAY-
   ROLL.

   *The power of the Civil Service Commission of the City of Detroit to certify a payroll is designed to assure that all hirings and promotions are made in accordance with lawful civil service requirements; the commission's refusal to certify a pay check on a ground such as tardiness, unauthorized vacation, insubordination, or incompetence would be beyond its authority.*

Appeal from Court of Appeals, Division 1, Bronson, P. J., and J. W. Fitzgerald and O'Hara, JJ., reversing and remanding Wayne, Victor J. Baum,

J. Submitted April 2, 1974. (No. 3 April Term 1974, Docket No. 55,156.) Decided August 2, 1974. See order on application for rehearing at end of opinions, p 369.

48 Mich App 305 reversed.

Complaint by Michael A. Gantz against the City of Detroit and others for an injunction to restrain his discharge from employment. Complaint dismissed. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendants appeal. Reversed and trial court affirmed.

*Schlussel, Lifton, Simon, Rands & Kaufman* (by *Joseph F. Galvin),* for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *John R. McKinley* and *Victor G. Marrocco,* Assistants Corporation Counsel, for defendants.

WILLIAMS, J. The issue before this Court, specifically reserved for consideration in *Williams v Detroit Civil Service Commission,* 383 Mich 507, 513; 176 NW2d 593 (1970), is whether the Civil Service Commission has power to enforce its residency rule by vacating the position of a civil service employee who violates that rule.

I —FACTS

Plaintiff was in 1971 an analyst for the City of Detroit's controller's office. Such employees are required to live within the city pursuant to Civil Service Commission rule (Rule VII, § 2).[1] The valid-

---

[1] Rule VII of the defendant Civil Service Commission provides, in part, as follows:

"Section 2. Residence Requirement.

"All persons working in any branch of the city civil service shall reside in the City of Detroit. If, however, upon consideration of all pertinent facts concerning an employee, or the nature of his work, the commission shall find that the interests of the city would be served

ity of this rule and the power of the commission to promulgate it was upheld in *Williams v Detroit Civil Service Commission*, 383 Mich 507; 176 NW2d 593 (1970). Plaintiff has stipulated that he was not a Detroit resident while employed as an analyst.

When the Civil Service Commission learned of the nonresidency of plaintiff through an anonymous letter, the matter was assigned to a hearing officer for investigation. As part of the investigation a hearing was held where plaintiff with counsel was given an opportunity to present evidence establishing his residency or refute evidence as to his nonresidency. Plaintiff declined to state any case on his behalf.

The charges then were submitted to the Civil Service Commission which, on May 30, 1971, determined that plaintiff be allowed 60 days to establish Detroit residency or "his position shall be declared vacant". Plaintiff contends this was in fact a discharge, while the commission claims plaintiff himself vacated his position by violating residency requirements.

In May 1971, plaintiff filed suit in Wayne Circuit Court alleging the commission was without authority to enforce the residence rule and sought to temporarily enjoin enforcement of his vacation or discharge. The trial court denied the request for injunctive relief and dismissed plaintiff's complaint believing that the commission had power to create and enforce its rules.

The Court of Appeals with one judge dissenting reversed (48 Mich App 305; 210 NW2d 459 [1973])

best, and that justice to the employee so requires, permission may be granted to such employee to reside outside of the city, upon application being made to this commission, with adequate reasons assigned, such application being approved by the department in which such employee is working."

citing *Williams v Detroit Civil Service Commission,* 15 Mich App 55; 166 NW2d 309 (1968). Defendant's leave to appeal to this Court was granted August 31, 1973. 390 Mich 768.

## II — *WILLIAMS v DETROIT CIVIL SERVICE COMMISSION*

In *Williams* the plaintiffs were employees of the City of Detroit and resided therein. They sought a hearing before the Civil Service Commission to question the validity of the residency rule. The hearing was held at which the challenge to the rule was turned down. This Court unanimously held that the Civil Service Commission did not exceed its powers by promulgating a general residence requirement for municipal employees and that the rule itself was constitutionally sound. As the plaintiffs in *Williams* were resident employees, the holding of the Court recognized the residency requirement as a continuing condition of eligibility for employment.

We also stated in *Williams:*

"The question of the enforcement of the rule was not before the Court of Appeals; that Court erred in raising the question and passing upon it. At issue here is the validity of a rule of the Civil Service Commission which makes city residence a requirement for municipal employees. Consequently, we decline to pass upon the question of enforcement of the rule by discharge of an employee, whether by the commission or by an appointing authority." 383 Mich 507, 513.

The Court of Appeals, per then Judge LEVIN, had ruled,

"The appointing authority, not the commission, decides when, if at all, to discharge an employee. rule *[sic]*

VII, which seeks to impose a mandate on the appointing authority and to compel discharge for nonresidence, exceeds the power of the commission to promulgate or enforce." 15 Mich App 55, 61; 166 NW2d 309 (1968).

## III —ISSUE: NOT DISCHARGE BUT ELIGIBILITY

The issue before this Court is not the power to *discharge* an employee as discussed above. The issue is the removal or withdrawal of certification of eligibility. While removal like discharge results in separation, it is quite a different action. Separation by discharge is through the power of discipline. Separation because of ineligibility is not because of discipline at all. It is like a circuit judge having to vacate his office because he moved from his residence within the circuit. It is the nonexistence of a *sine qua non* to employment.

## IV —REMOVAL POWER OF THE CIVIL SERVICE COMMISSION

Plaintiff's major argument is that the commission can point to no express authority in the Detroit City Charter which empowers the commission to enforce its rules by *discharging* the employee.

As we have pointed out, the commission did not remove the employee as the hiring authority would have by discharge. Rather when the employee after notice and hearing was found not to be a resident, a condition of eligibility for employment, he became ineligible for continued employment. He was not thereupon discharged as a disciplinary measure. Further he was allowed 60 days within which to establish Detroit residency and advised that if he didn't "his position shall be

declared vacant". When he failed to establish Detroit residency, his position was found vacant and his name removed from the rolls.

Probably in the majority of cases, it would be the department head or the appointing authority who would exercise the power of removal of an employee. This is so because normally a department head is familiar with the facts and circumstances and conditions relating to the work of the employee. The department head would best know whether or not any particular employee was producing the quantity and quality of work necessary for efficient operations. The department head would know of any excessive tardiness or absenteeism and any mitigating circumstances connected therewith. There could be examples of perfect employees in the quality and quantity of their work record, but they could lose their eligibility for continued employment in city service because they no longer met the requirements of the residence rule.

Therefore, in reviewing the city charter in search of some form of removal power vested in the commission, it is well to keep in mind that removal power may be granted and exercised in some other manner than discharge as a disciplinary measure.

Title 4, ch 2, § 11 of the city charter contains the following language:

"All applicants for offices or positions in said classified service * * * shall pass an examination * * * with specific limitations as to residence, * * * ."

Therefore to be eligible for a position in the classified service, an applicant must meet a residency requirement. If the applicant is given a position he must, by Rule VII, § 2 of the civil service rules

interpreted in *Williams,* continue to reside in the city.

The general provision relating to the powers of the Civil Service Commission is Title 4, ch 2, § 7. It provides in part:

"The powers and duties of the commission shall be as follows:

\* \* \*

"(d) Shall, by itself or otherwise, investigate the enforcement of the provisions of this chapter, of its own rules and of the action of the appointees in the classified service."

Just as residency is a continuing requirement, it is clear from § 7(d) above that the role of the Civil Service Commission over city employees does not end at the time of appointment to a position, but continues throughout the period of an employee's service during which the commission is directed to "investigate the enforcement" of its rules and the actions of persons employed in the city's service, from initial employment to termination.

Not only may the commission "investigate the enforcement" of its rules, but if through this investigation it is found that one of the conditions of eligibility for employment is not being met, it may under Title 4, ch 2, § 20 refuse to approve the payroll for an employee ineligible for continued employment. Section 20 provides:

"The commission shall be furnished by each department under its jurisdiction with a copy in duplicate of each payroll, on the days, designated by the commission, and *the commission shall examine such copy to determine if all* the names and no other *names are on said payroll than those on the active list, and properly certified by the commission.* Should said payroll be found to be correct in its personnel, the said commis-

sion shall stamp its approval on one copy of said payroll and forward it to the city controller, and place the other copy in the files of the commission. *Should said payroll be incorrect in its personnel, the approval of the commission shall be withheld from any entries thereon which shall be incorrect and the remainder of the roll shall be approved and forwarded to the controller.* The department submitting such payroll shall be immediately notified of such incorrect entries, and shall submit any corrections thereof on its next regular payroll or by supplemental payroll at any time prior thereto. *Neither the controller of said city, nor any other officer concerned in the auditing or paying of any salary or wages or other claims, shall approve of, or in any manner be concerned in the payment of any salary or wages of any persons subject to the jurisdiction of the commission before the commission has forwarded to the controller its approval of the same.* " (Emphasis added.)

Since it is the defendant commission which certifies potential city resident employees, it naturally follows that when the employee ceases to be a city resident he ceases to be eligible for continued employment and the commission has the duty to find that the employee's position has been vacated by action of the nonresident employee who has made himself ineligible for continued employment. *In effect, the position is vacated by action of the nonresident employee. The individual is no longer an eligible certified employee* and in accordance with city charter, Title 4, ch 2, § 20, *supra,* the commission has a duty to disapprove the payroll of the ineligible employee.

The residency rule is thus effectively enforced by the commission being able to prohibit payment of the ineligible employee's payroll.

There are strong policy reasons for allowing the commission to enforce its rules relating to eligibility for employment. If not, any department head or hiring authority could ignore the findings of the

commission and retain an employee who did not reside in the city. This would then require the commission to institute suit to enforce its rule. Surely such a labyrinthine procedure is not required to enforce this rule. Further there are some 49 appointing authorities in the city government. The uniformity of application of the residency rule is best carried out by one central enforcer, the commission.

## V —SOURCE OF POWERS OF THE CIVIL SERVICE COMMISSION

The home-rule cities act, MCLA 117.4i(7); MSA 5.2082(7)[2] provides statutory authority for the inclusion in the charter of a home-rule city of a Civil Service System. In Title 4, ch 2 of its charter, the City of Detroit implemented the enabling provision by creating a Civil Service Commission.

We agree with plaintiff's contention that the powers of the commission are defined by and limited to those powers granted to it in the city charter. In *Brady v Detroit*, 353 Mich 243, 248; 91 NW2d 257 (1958) it was stated:

"In the adoption of rules pursuant to charter authority the civil service commission is bound by the provisions creating it and defining its powers and duties."

See also *Philbrick v Dust*, 178 Mich 605; 146 NW 175 (1914).

---

[2] MCLA 117.4i(7); MSA 5.2082(7) provides:
"Each city may in its charter provide:

\* \* \*

"(7) For a system of civil service for its employees including the employees of any city board of health and the employees of any prison operated or maintained by it. Charter provisions heretofore or hereafter adopted providing for a system of civil service for employees of any local health board shall be valid and effective."

Such power is found in Title 4, ch 2, § 20 of the city charter.

## VI —EXCLUSIVITY OF DISCHARGE POWER IN THE HIRING AUTHORITY

Plaintiff cites precedent from this Court which he contends supports the proposition that only the hiring authority can discharge the employee. *Osborn v Common Council of Detroit,* 111 Mich 362; 69 NW 644 (1896); *Delaney v Detroit Board of Fire Commissioners,* 244 Mich 64; 221 NW 283 (1928); *Slavin v Detroit,* 262 Mich 173; 247 NW 145 (1933). These cases do stand for the proposition that the hiring authority may discharge an employee for reasons of discipline. However, these cases do not speak to eligibility for employment or the power of the Civil Service Commission to find a position vacant for failure to satisfy a condition of eligibility for employment.

Plaintiff also contends that the discharge power is vested exclusively in the appointing authority by the city charter[3] and the rules of the Civil Service Commission.[4] Again, while these provisions

---

[3] Title 4, ch 2, § 18, provides:

"No person shall, for political or religious reasons, be discharged from the classified service, or reduced in pay or position, or suspended by the *departmental head appointing* him. In every case of reduction or suspension for more than thirty days and in all cases of discharge, the *appointing officer* shall furnish the subordinate reduced, suspended or discharged, also the civil service commission, with a copy of the order of removal and his reasons therefor. The *commission may,* and *upon the written request of the subordinate made within ten days, shall investigate.* If it shall find as the result of such investigation that the discharge, reduction or suspension was made for political *or* for reasons other than the good of the service, it shall *so report to the department head* * * * ." (Emphasis added.)

[4] Rule X of the Detroit Civil Service Commission provides in part:

"(1) In the removal or discharge of an employee, *the head of the department shall file in* his department and with this Commission, and shall cause to be served on the employee sought to be removed, either personally or by mail addressed to the last known address by

do vest in the hiring authority the power to discharge an employee, they in no way preclude the Civil Service Commission from determining that a condition of eligibility for employment is not met and from finding the employee's position vacant.

## VII —SEPARATION OF POWERS

Plaintiff has also raised in passing the argument that even if charter authority can be found for allowing the commission to enforce its ruling, such grant of power violates separation of powers principles. As noted by Professor Frank Cooper in his treatise on "State Administrative Law",

"Except in the comparatively rare cases * * * where a combination of powers in a single agency was deemed to threaten, in some measure, the respective primacies of the legislature or of the courts, the states have sustained the delegation of combined legislative, prosecutory, and judicial powers to agencies." Vol 1, p 23.

See also Davis, 2 Administrative Law, § 13.02, p 181. This case does not fall within the exception.

## VIII —CONCLUSION

The Civil Service Commission does not discharge

the record of the department, a written order of removal stating therein with reasonable definiteness the reasons alleged to constitute the cause for removal.

"NOTE: In view of the provisions of Title IV, Chapter II, Section 18 of the Charter, where the appointing officer is a Commissioner or a head of a department, *the discharge should be signed by him.* In those departments, *where the appointing officer is a Commissioner,* the discharge should be authorized at a meeting of the Commission and the notice of discharge signed by the person authorized by the Commission.

"(2) *For the assistance of heads of departments or divisions, and employers generally in the public service,* and for the information of employees, the following specifications are declared to be cause for removal or discharge from the classified service, though charges may be based on causes other than those enumerated * * * ." (Emphasis added.)

an employee as would a department head. When an employee ceases to be a resident, he becomes ineligible for continued employment; the commission has a duty to refuse to approve the name of the ineligible employee on the payroll and to vacate the employee's position. Disciplinary matters are left with the department heads; however, the Civil Service Commission retains the right to police the administration of requirements of eligibility for continued employment.

The Court of Appeals is reversed. The order of the trial court is affirmed.

T. M. KAVANAGH, C. J., and SWAINSON and COLEMAN, JJ., concurred with WILLIAMS, J.

LEVIN, J., *(dissenting).*

## I

In *Williams v Detroit Civil Service Commission,* 383 Mich 507, 513; 176 NW2d 593 (1970), the Court "decline[d] to pass upon the question of enforcement of the [Civil Service Commission's residency] rule by *discharge* of an employee, whether by the Commission or by an appointing authority." (Emphasis supplied.)

The question addressed by this Court "is whether the Civil Service Commission has power to enforce its residency rule by *vacating the position* of a civil service employee who violates that rule." (Emphasis supplied.)

In practical terms, there is no distinction between the status of a "discharged" employee and one whose position has been "vacated". In both cases, the employment relationship is severed. While this Court seemingly concedes that both

termination procedures produce identical results, "separation of the employee", its analysis and disposition focus on its assertion that "discharge" and "vacation" of a position are quite "different action[s]."

The Court equates the vacation of a civil service employee's position to the vacation of the office of a justice or judge upon his removing his domicile beyond the limits of the territory from which he was elected or appointed.[1]

But even the vacation of judicial office mandated by the constitution is not self-executing. *Cf. In re Kapcia,* 389 Mich 306, 314; 205 NW2d 436 (1973). Until the jurisdiction of a court is properly invoked and entry of a judgment declaring the office vacant, a judge may continue to exercise his powers although he has in fact removed his domicile in violation of the constitutional provision.

Labeling a discharge a "vacation" of position does not change the issue before us.

## II

The power of the City of Detroit to establish a residency requirement for its employees is not at issue in this case. Nor is there any issue concerning the newly declared duty of the city to bargain collectively on the question of residency. *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974). Nor is there any issue as to the power of the city to enforce a properly promulgated residency requirement.

The sole issue is whether the Civil Service Commission of the City of Detroit has the authority to enforce a residency requirement as a *continuing* condition of employment.

---

[1] Const 1963, art 6, § 20.

The Civil Service Commission derives its powers from the Charter of the City of Detroit. The charter authorizes the commission to establish minimum hiring qualifications for prospective employees of the city.

"All *applicants* for offices or positions in said classified service, except those herein otherwise specified, shall pass an *examination* which shall be made public, competitive and free to all citizens of the United States, *with specific limitations as to residence,* age, health, habits and moral character * * * ." (Emphasis supplied.) Detroit Charter, Title 4, ch 2, § 11.

This Court, in considering this language in *Williams, supra,* rejected a challenge to the validity of a rule of the Civil Service Commission making city residence a "requirement" for municipal employees. The Court's opinion primarily focused on claims that the residence requirement was a denial of due process, equal protection and the Michigan constitutional guarantee of enjoyment of civil or political rights.

The Court, as appears in the following excerpt from *Williams* (pp 513–514), also considered whether the charter conferred on the commission the authority to promulgate a residency requirement, but expressly reserved the question presently before us:

"The question of the enforcement of the rule was not before the Court of Appeals; that Court erred in raising the question and passing upon it. At issue here is the validity of a rule of the Civil Service Commission which makes city residence a requirement for municipal employees. Consequently, we decline to pass upon the question of enforcement of the rule by discharge of an employee, whether by the commission or by an appointing authority.

"(a) *Is Rule VII within the Power Conferred by the City Charter?*

"The trial judge analyzed the provisions of Rule VII and the charter, in part, as follows:

" 'The city fathers did say and the people of Detroit did enact that there might be "a limitation," that is a condition, requirement or restriction, of "residence" so long as it is "uniform as to each kind of work or occupation." A residence restriction applicable to each and every job, occupation or work classification within the city's classified service would appear to be uniform as to each kind of work or occupation. In essence, Rule VII is such a restriction.' "

The "authority" of a judicial opinion is its reasoning.

It is apparent that the sole basis on which this Court predicated its conclusion in *Williams* that the power to promulgate the rule was conferred by the charter is the quoted language of § 11. The trial judge's analysis, adopted by the *Williams* Court, is indisputably a paraphrase of § 11. Section 11 indisputably concerns only "applicants", it authorizes the adoption of "specific limitations as to residence" only in connection with "examination" of "applicants".

### III

The distinction between an entrance requirement—a precondition of employment—and a continuing condition of employment was recently emphasized in *Detroit Police Officers Association v Detroit, supra,* p 61:

"Once an applicant has met these standards and has been hired as an employee the 'recruiting requirements' as such do not continue to regulate his or her right to hold the job."

The commission's establishment of one continuing condition of employment implies that it may establish others. Such conditions—hours of work, method of payment, establishment of holiday, vacation and sick leave policy—are, however, generally established by the common council by enactment of an ordinance, not by promulgation of a regulation of the Civil Service Commission.

The commission's initiative in this area is clearly beyond its authority, which is limited to

(i) classifying positions,

(ii) holding examinations "with specific limitations as to residence"—the word "with" modifies the word "examination" and, thus, the phrase "with specific limitations as to residence" relates only to examinations, not tenure of employment,

(iii) preparing an eligible list,

(iv) certifying names to the appointing authority,

(v) disapproving discharge of provisional appointees, consenting to transfer of provisional appointees,

(vi) setting aside promotions it finds were made for reasons other than the "interest of the service" and discharges, etc., "made for political or for reasons other than the good of the service".

The appointing authority, not the commission, decides when, if at all, to discharge an employee. Rule VII, which imposes a mandate on the appointing authority and compels discharge for nonresidence, exceeds the commission's power to promulgate or enforce.[2]

---

[2] In *Delaney v Detroit Board of Fire Commissioners,* 244 Mich 64, 66–67; 221 NW 283 (1928), a fire fighter was discharged for " 'intoxication and for the good of the service.' " The Civil Service Commission ordered him reinstated. This Court reversed, holding that § 18 limits the commission to the determination of two questions:

IV

Section 7 of the charter confers upon the commission powers and duties "necessary to carry out the provisions hereof." It may adopt rules "adapted to carry out the purposes of this chapter and not inconsistent with its provisions for the *examination* and *selection* of persons to fill the offices and positions in the classified service, which are required to be filled by appointment and *for the selection* of persons to be employed in the service of the city."

The general residence requirement established by Rule VII as a continuing condition of employment is unrelated to the commission's powers and duties of establishing procedures and requirements for examination and selection of employees.

V

Whatever may be the commission's power to certify a payroll, the power is designed to assure that all hirings and promotions are made in accordance with lawful civil service requirements. If

---

"(1) Was the employee discharged for political or religious reasons, or

"(2) Was he discharged for other reasons than the good of the service."

The *Delaney* Court also instructed the commission not to retry the intoxication issue; the commission's "business is to see that the departmental heads act in good faith, not to correct their judgment":

"The board of fire commissioners has the power of appointment and the power of removal for any reason not prohibited by the charter. It alone is given jurisdiction to try the question of guilt or innocence on specific charges made against its employees."

In *Slavin v Detroit*, 262 Mich 173; 247 NW 145 (1933), policemen and firemen who had been discharged as an economy measure failed in their effort to compel the city to restore them.

As to the location of the power of appointment and removal of firemen, *see Delaney v Detroit Board of Fire Commissioners, supra; Slavin v Detroit, supra*, p 179.

*See also, Philbrick v Dust*, 178 Mich 605, 607; 146 NW 175 (1914). *Cf. Kane v Flint*, 342 Mich 74, 79; 69 NW2d 156 (1955).

the commission's power to certify a payroll can be used to effectuate other policies, then the commission could apparently refuse to certify a tardy employee or one who took an unauthorized vacation or who was insubordinate or incompetent. It is clear, however, that the commission's refusal to certify a pay check on any such ground would be beyond its authority. The pay check certification argument begs the question.

I would affirm the Court of Appeals.

T. G. KAVANAGH and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

## *ORDER*

Entered December 20, 1974.—REPORTER.

On order of the Court, an application for rehearing having been filed herein, the Court reaffirms its opinion and reversal of the Court of Appeals but vacates its affirmance of the trial court and remands to the Court of Appeals for further consideration, in light of the Court's opinion at 392 Mich 195 (1974), of issues previously raised before the Court of Appeals but not discussed due to the Court of Appeals' disposition of this matter. Costs to defendants-appellants proceedings in this Court only.