**Michael J. JONES, Plaintiff,**

v.

**J.J. SECURITY, INC., a Wisconsin Corporation, Defendant.**

**No. 90–CV–71596.**

United States District Court,
E.D. Michigan, S.D.

July 3, 1991.

Eugene S. Hoiby, Livonia, Mich., for plaintiff.

Charles F. Glass, Schureman, Frakes, Glass & Wulfmeier, Detroit, Mich., for defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

This action arises from the "discharge" of plaintiff, Michael J. Jones, from the employ of defendant, J.J. Security, Inc. ("J.J. Security"). Because I find that plaintiff was not "discharged," but rather made himself ineligible for continued employment, I GRANT defendant's motion for summary judgment.

### FACTS

Plaintiff commenced employment as a safety officer for J.J. Security at Detroit City Airport on September 26, 1988. At the time, he resided in the City of Wyandotte. In November 1988, J.J. Security signed a contract with the City of Detroit whereby J.J. Security agreed to continue to provide security services at Detroit City Airport. This contract contained a provision requiring J.J. Security's employees to meet a number of "minimum preliminary requirements," including that they be residents of the City of Detroit.

In the spring of 1989, defendant learned that plaintiff was not a Detroit resident, and thereafter informed plaintiff that he must move into Detroit in order to continue employment with J.J. Security. Plaintiff was given six weeks to move into Detroit. When plaintiff refused to comply, he was terminated.

### Analysis

■ Because jurisdiction is premised on the diversity of the parties,[1] this case is governed by Michigan law. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In a situation akin to this involving public employees employed by the City of Detroit, the Michigan Supreme Court has held that an employee who moves out of the City of Detroit, in violation of Detroit's residency requirement, has not been "discharged," but rather makes himself ineligible for continued employment:

> The issue before this court is not the power to *discharge* an employee as discussed above. The issue is the removal or withdrawal of certification of eligibility. While removal, like discharge, results in separation, it is a quite different action. Separation by discharge is through the power of discipline. Separation because of ineligibility is not because of discipline at all. It is like a circuit judge having to vacate his office because he moved from his residence within the circuit. It is the non-existence of a *sine qua non* to employment.

*Gantz v. City of Detroit*, 392 Mich. 348, 356, 220 N.W.2d 433 (1974) (emphasis in original).

The rationale of *Gantz* applies here. Plaintiff was given six weeks to establish residency within the City of Detroit but voluntarily refused to do so. He thereby made himself ineligible for continued employment with J.J. Security and cannot now claim that he was wrongfully "discharged."[2] Accordingly, plaintiff's entire complaint fails as a matter of law.

■ Plaintiff contends, however, that it was unconstitutional for J.J. Security and the City of Detroit to enter into a contract which requires employees of J.J. Security to live in the City of Detroit. I disagree.

The law is clear that municipalities, including Detroit, can constitutionally require that their employees be city residents. *See McCarthy v. Philadelphia Civ-*

---

1. Plaintiff is a resident of Wyandotte, Michigan, and defendant is a Wisconsin corporation.

2. Plaintiff argues that his refusal to comply with the Detroit residency requirement was not the real reason for his discharge. I find no evidence in this record substantiating plaintiff's claim.

il *Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (upholding Philadelphia ordinance requiring city employees to be city residents); *Detroit Police Officers Association v. Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972) (upholding residency requirement for police officers); *Abrahams v. Civil Service Commission,* 65 N.J. 61, 319 A.2d 483 (1974) (upholding residency requirement for Newark city employees).

Courts have also upheld government contracts requiring preferential hiring of residents in cases where, as here, the contract is funded solely by city monies.[3] *See, e.g., White v. Massachusetts Counsel of Construction Employers, Inc.,* 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983) (court upheld executive order issued by mayor of Boston, requiring that all construction contracts funded in whole or in part by city funds be performed by a work force at least half of which was to consist of Boston residents); *United Bldg. and Constr. Trades Council v. Camden,* 88 N.J. 317, 443 A.2d 148 (1982) ("When the government decides to purchase ... services rather than perform them itself, it retains constitutional power to prefer its own citizens, at least to some extent....") (reversed on other grounds, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984)); *People ex rel. Holland v. Bleigh Construction Co.,* 61 Ill.2d 258, 335 N.E.2d 469 (1975) (Supreme Court of Illinois held that Privileges and Immunities clause of United States Constitution does not forbid state statute requiring that Illinois residents be given preference over non-residents in employment on public works projects). Based on the foregoing authorities, I find that the residency requirement contained in the contract between the City of Detroit and J.J. Security is not unconstitutional.

Plaintiff's admitted failure to comply with that requirement removed his eligibili-

ty for continued employment with defendant.[4] In essence, plaintiff quit his job. Accordingly, his entire complaint fails as a matter of law. Defendant's motion is GRANTED.

IT IS SO ORDERED.

---

**3.** The record indicates that the contract between the City of Detroit and J.J. Security is funded solely by city monies.

**4.** Plaintiff argues that the instant contract did not apply to him because he was a "safety offi-

cer" and the residency requirement only applied to "security officers." This claim is without merit inasmuch as the contract used these terms interchangeably.